119 F.3d 764
 97 Cal. Daily Op. Serv. 5496, 97 Daily Journal
D.A.R. 8907
Brenda PREMO, Director of the Department of Rehabilitation,
State of California, Plaintiff-Appellant,
v.
Jeana MARTIN; The United States Department of Education;
Richard W. Riley, Secretary of the United States
Department of Education, Defendants-Appellees.
 No. 96-55456.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1997.
Decided July 11, 1997.
 
 James F. Ahern, Deputy Attorney General of the State of California, for plaintiff-appellant.
 John F. Daly, Department of Justice, Washington, DC, for defendants-appellees the United States Department of Education and Secretary of Education Richard Riley.
 Janice A. Jenkins, Yturbide & Jenkins, San Francisco, CA, for defendant-appellee Jeana Martin.
 Appeal from the United States District Court for the Central District of California; John G. Davies, District Judge, Presiding. D.C. No. CV-95-00546-JGD.
 Before: GOODWIN, D.W. NELSON, and TROTT, Circuit Judges.
 D.W. NELSON, Circuit Judge.
 
 
 1
 Brenda Premo, in her official capacity as the Director of the California Department of Rehabilitation (the "State"), appeals the district court's grant of summary judgment to Jeana Martin, the United States Department of Education, and Secretary of Education Richard Riley. Martin, formerly a blind vendor licensed under the Randolph-Sheppard Vending Stand Act (the "Act"), 20 U.S.C. §§ 107-107f, invoked the arbitration provisions of the Act in order to resolve a dispute between herself and the Department of Rehabilitation. An arbitration panel convened by the United States Department of Education awarded Martin damages, injunctive relief, and attorney's fees. The State subsequently brought suit in federal district court, claiming that the Eleventh Amendment prohibits Randolph-Sheppard arbitration panels from awarding compensatory relief. In the alternative, the State argued that the arbitration proceedings violated due process. Martin counterclaimed, seeking judicial enforcement of the award. The State responded that the Eleventh Amendment bars the enforcement of such awards in federal court. The district court granted Martin's motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107-107f, establishes a cooperative federal-state program that provides employment opportunities for the blind. The Act grants priority to blind persons who desire to operate vending facilities on federal property. 20 U.S.C. § 107(b). At the federal level, the Secretary of Education is charged with the overall responsibility for administering the Act. 20 U.S.C. §§ 107(b), 107a(a).
 
 
 3
 At the state level, state licensing agencies ("SLAs") designated by the Secretary of Education implement the program. 20 U.S.C. § 107a(a)(5). State participation in the program is voluntary, and a state agency seeking to be designated as a Randolph-Sheppard SLA must apply to the Secretary of Education and agree to a number of conditions. For example, the Act requires SLAs to give preferences to blind persons in need of employment, 20 U.S.C. § 107a(b), to negotiate with federal agencies for the operation of vending facilities on federal sites, 20 U.S.C. § 107a(c), and to equip the facilities, 20 U.S.C. § 107b(2). In addition, the state agency must:
 
 
 4
 make application to the Secretary and agree--
 
 
 5
 ....
 
 
 6
 (6) to provide to any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a fair hearing, and to agree to submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration as provided in section 107d-1 of this title.
 
 
 7
 20 U.S.C. § 107b(6).
 
 
 8
 The facts relevant to this case are not in dispute. In 1985, the California Department of Rehabilitation, the designated SLA for the State of California, issued a license to Jeana Martin. The license permitted her to operate a snack bar and lunch room at the General Mail Facility of the United States Post Office in Santa Ana, California. Martin left the position in 1991 when she experienced financial losses and other difficulties. Although she relocated to other sites, her financial condition worsened, and the State revoked her license in 1992.
 
 
 9
 During this period, Martin twice requested a state hearing. In 1990, she filed a complaint alleging that the State had violated the Act by failing to take adequate steps to ensure compliance by the Postal Service. In 1992, she challenged the State's termination of her vendor's license. In both cases, Martin was denied relief.
 
 
 10
 To contest these decisions, Martin invoked her right to arbitration by a panel convened by the Secretary of Education under 20 U.S.C. §§ 107d-1, 107d-2. Pursuant to the terms of the statute, Martin selected one panel member, the State selected another, and the panel members designated by Martin and the State agreed to a third person who chaired the panel.
 
 
 11
 During the course of the proceedings, the panel refused a number of the State's requests. First, the panel declined to grant a continuance to the State's attorney. When the State objected to Martin's selection of Robert Humphreys as a panel member because Humphreys previously had expressed a view about one of the legal issues affecting Martin, the panel chair overruled the objection. During the hearing, the panel admitted, over the State's objection, the testimony of Durward McDaniel, an attorney who had previously advised Martin.
 
 
 12
 In August of 1994, the panel ruled in favor of Martin. The panel determined that the State had violated the Act by refusing to secure the renovation of the vending facilities at Santa Ana, by failing to insist on assignment of income from competing vending machines to Martin, and by declining to take effective steps to prevent the Postal Service from renewing a contract with another vendor. Reasoning that these lapses were the cause of Martin's financial difficulties, the panel also concluded that the State had improperly terminated her license. In December 1994 the panel awarded Martin $379,025.05 in lost income and $70,898.65 in attorney's fees and costs. The panel also ordered the State to reinstate Martin's license, to restore her to a comparable vending facility, and to pay her at a rate of $5,731.94 per month until she is restored.
 
 
 13
 The State then filed this federal action, naming the Secretary of Education, the United States Department of Education ("federal defendants"), and Martin as defendants. The State claimed that the Eleventh Amendment prohibits Randolph-Sheppard arbitration panels from awarding compensatory relief and bars the enforcement of such awards in federal court. In the alternative, the State alleged that the denial of the continuance, Humphreys' participation as a panel member, and the admission of McDaniel's testimony amounted to a violation of due process. Martin counterclaimed, seeking enforcement of the arbitral award. Both the State and Martin filed motions for summary judgment. The federal defendants did not oppose the State's motion for summary judgment on Eleventh Amendment grounds but filed a motion for partial summary judgment on all other issues.
 
 
 14
 The district court granted summary judgment to Martin, concluding that the State had waived its sovereign immunity. The court further concluded that no violation of due process had occurred because the State is not a "person" within the meaning of the Fifth Amendment, and that the award was not arbitrary and capricious. Following this decision, the State filed a motion to amend its complaint, which the district court denied. This timely appeal followed.
 
 STANDARD OF REVIEW
 
 15
 The question of Eleventh Amendment immunity is a purely legal issue that we review de novo. Micomonaco v. Washington, 45 F.3d 316, 319 (9th Cir.1995).
 
 
 16
 An arbitral award under the Randolph-Sheppard Act is reviewed as an agency action under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. See 20 U.S.C. § 107d-2. Under the APA, agency action may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); In re Transcon Lines, 89 F.3d 559, 563 (9th Cir.1996).
 
 
 17
 We review a district court's denial of a motion to amend a complaint for an abuse of discretion. Janicki Logging Co. v. Mateer, 42 F.3d 561, 563 (9th Cir.1994).
 
 DISCUSSION
 I. Eleventh Amendment
 The Eleventh Amendment provides:
 
 18
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 19
 U.S. Const. amend. XI. Although the Amendment does not explicitly prohibit an action against a state by one of the state's own citizens, the Supreme Court has construed the Amendment as barring such suits. See Welch v. Texas Dept. of Highways & Pub. Transp., 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987) (citing Hans v. Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890)). Even when a state is not a named party, as is the case here, the Eleventh Amendment may bar a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974). However, there are two well-recognized exceptions to the Eleventh Amendment protection from suits for damages. Congress can abrogate a state's Eleventh Amendment sovereign immunity without the consent of the state in certain instances, or a state can waive its immunity by consenting to suit in federal court. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).
 
 
 20
 We have not as yet had occasion to consider the intersection of the Eleventh Amendment and the Randolph-Sheppard Act. Three other circuit courts have addressed the issue, with varying results. See Tennessee Dep't of Human Serv. v. United States Dep't of Educ., 979 F.2d 1162, 1166-68 (6th Cir.1992) (holding that Eleventh Amendment does not apply to arbitration proceedings under Randolph-Sheppard Act but that it does bar proceedings in federal court to enforce arbitral awards of compensatory relief); McNabb v. United States Dep't of Educ., 862 F.2d 681, 683-84 (8th Cir.1988) (refusing to enforce compensatory damages awarded by Randolph-Sheppard arbitration panel, in per curiam judgment with each judge writing separately); Delaware Dep't of Health & Soc. Servs. v. United States Dep't of Educ., 772 F.2d 1123, 1137-38 (3d Cir.1985) (concluding that states participating in Randolph-Sheppard program have waived their sovereign immunity to both arbitration proceedings and federal judicial enforcement of arbitral awards). As these decisions make clear, a case such as this one presents two central questions. First, does the Eleventh Amendment prevent Randolph-Sheppard arbitration panels from awarding compensatory relief? Second, does the Amendment bar the federal courts from enforcing such awards?
 
 
 21
 The district court relied on Delaware to conclude that by participating in the Randolph-Sheppard program, the State has waived its sovereign immunity to both arbitral awards and federal actions to enforce such awards. Martin agrees. Citing Tennessee, the federal defendants take the position that the Eleventh Amendment does not limit the authority of Randolph-Sheppard arbitral panels to award compensatory relief but does bar federal courts from enforcing such awards. The State maintains that the Eleventh Amendment limits the authority of both the arbitral panels and the federal courts to fashion compensatory relief.
 
 
 22
 We affirm the decision of the district court. We conclude that the Eleventh Amendment does not apply to Randolph-Sheppard arbitration proceedings and thus does not limit the authority of arbitration panels convened under the Act to award compensatory relief. In addition, we believe that the overwhelming implication of the Act is that participating states have waived their sovereign immunity to suit in federal court for the enforcement of such awards.[1]
 
 
 23
 A. Authority of the Randolph-Sheppard arbitration panel to award compensatory relief
 
 
 24
 The State's position that the Eleventh Amendment deprives Randolph-Sheppard arbitration panels of the authority to award compensatory relief is wholly unsupported. The text of the Amendment clearly indicates that it does not apply to arbitration proceedings. In referring to the "Judicial power of the United States," the Amendment on its face limits only the authority of Article III courts. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906-07, 79 L.Ed.2d 67 (noting that "the fundamental principle of sovereign immunity" embodied in the Amendment "limits the grant of judicial authority in Art. III ") (emphasis added). The Amendment does not purport to affect proceedings in tribunals established by statute. See Ellis Fischel State Cancer Hosp. v. Marshall, 629 F.2d 563, 567 (8th Cir.1980) ("[A]dministrative action against states pursuant to individual complaints does not run afoul of the eleventh amendment").
 
 
 25
 Of the three circuits to consider the effect of the Eleventh Amendment on Randolph-Sheppard arbitral proceedings, one has held that the Amendment does not apply, and another has clearly indicated its support for this view. See Tennessee, 979 F.2d at 1167 ("[T]he Eleventh Amendment does not apply to such an arbitration panel."); Delaware, 772 F.2d at 1138 (noting that position that Eleventh Amendment applies to Randolph-Sheppard arbitration panels is "hardly supportable by the text"). The third court that addressed the matter did not decide the question. See McNabb, 862 F.2d at 683. We follow the opinion in Tennessee and conclude that the Eleventh Amendment does not apply to proceedings before Randolph-Sheppard arbitration panels.
 
 
 26
 We note that the parties do not dispute that, as a matter of statutory construction, the Randolph-Sheppard Act gives arbitration panels the authority to award compensatory relief. The Act provides that states must agree to provide blind licensees "dissatisfied with any action arising from the operation or administration of the vending facility program" with a hearing and to "submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration as provided in section 107d-1." 20 U.S.C. § 107b(6) (emphasis added). Section 107d-1(a) further provides that an arbitration panel convened to resolve a dispute between a state and a blind vendor "shall be final and binding on the parties " (emphasis added).
 
 
 27
 It has been widely recognized that this language permits arbitration panels to award compensatory relief. See, e.g., Tennessee, 979 F.2d at 1165 ("The natural reading of these provisions is that the arbitration panel may consider and resolve any complaint of a vendor arising out of the program, including a complaint that the state agency has taken money to which the vendor is entitled."); Delaware, 772 F.2d at 1137 (noting that "the statutory language is unambiguous" in allowing compensatory relief). In drawing this conclusion, courts have emphasized that the prevailing conception at the time the Act was passed was that arbitral resolution of disputes involved awards of back pay and other forms of compensatory relief. See, e.g., Tennessee, 979 F.2d at 1165; Delaware, 772 F.2d at 1136.
 
 
 28
 Thus, while it is true that the Act does not refer expressly to compensatory relief and one circuit judge has concluded that the Act does not permit such relief, see McNabb, 862 F.2d at 687, this view has been largely discredited. Indeed, the federal defendants, who in the past have argued that the Act did not permit such relief, now concede that their prior position was incorrect. Accordingly, we conclude that the arbitration panel had the authority to award compensatory relief to Martin.
 
 
 29
 B. Enforcement of compensatory Randolph-Sheppard arbitral awards in federal court
 
 
 30
 Consent by a state to be subject to judicial enforcement of a damages award has long been recognized as an exception to Eleventh Amendment immunity. See, e.g., Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 308-09, 110 S.Ct. 1868, 1872, 1874-75, 109 L.Ed.2d 264 (1990); Atascadero, 473 U.S. at 238, 105 S.Ct. at 3145. A state will be deemed to have waived its sovereign immunity when (1) the state expressly consents to suit; (2) a state statute or constitution so provides; or (3) Congress clearly intended to condition the state's participation in a program or activity on the state's waiver of immunity. Micomonaco, 45 F.3d at 319. However, waiver will be found "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." Port Authority, 495 U.S. at 305, 110 S.Ct. at 1873 (alteration in original) (internal quotations and citations omitted).[2]
 
 
 31
 In this case, the State of California has not expressly consented to suit. Nor has California enacted a statute that provides for waiver. The California statute establishing the state counterpart to the federal Randolph-Sheppard program does provide that the decision of an arbitration panel "shall be final and binding on the parties except as otherwise provided in the act." Cal. Welf. & Inst.Code § 19635 (West 1991). While this statute clearly reflects California's intent to be bound by Randolph-Sheppard arbitral awards, it does not provide clear enough consent to suit in federal court to amount to an express statutory waiver of sovereign immunity. See Atascadero, 473 U.S. at 241, 105 S.Ct. at 3146-47.
 
 
 32
 However, the evidence that Congress conditioned state participation in the Randolph-Sheppard program on consent to federal judicial enforcement of compensatory awards is overwhelming. The statute explicitly requires participating states to agree to a number of conditions. Specifically, each state agency "shall ... agree" to provide any dissatisfied blind vendor with the opportunity for a fair hearing and "to submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration." 20 U.S.C. § 107b. The statute further provides that arbitration "shall be final and binding on the parties." 20 U.S.C. § 107d-1(a) (emphasis added). In addition, the arbitration decision "shall be subject to appeal and review as a final agency action for purposes of chapter 7 of such title 5 [5 U.S.C. §§ 701-706 of the APA]." See 20 U.S.C. § 107d-2. The APA provides that "agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." 5 U.S.C. § 703. Thus, by requiring the states to submit to "binding" arbitration, and by providing for appeal and review under the APA, the Randolph-Sheppard Act unequivocally guarantees that arbitration awards will be judicially enforceable.
 
 
 33
 We believe that these statutory provisions also reflect participating states' consent to the enforcement of arbitration awards in federal court. The Randolph-Sheppard Act is federal, and an agency of the federal government, the Department of Education, is charged with the responsibility of convening arbitration panels under the Act. It is true, as the federal defendants point out, that the Act does not specifically designate federal courts as the proper tribunals for the enforcement of such awards. Blind vendors might be able to bring suit in state court to enforce arbitration awards. Yet the fate of such suits is uncertain, as state doctrines of immunity may apply. See Tennessee, 979 F.2d at 1169 n. 4. We do not think that the mere possibility of state court enforcement satisfies the statute's command that arbitration must be binding.
 
 
 34
 Under these circumstances, there is no "room for any other reasonable construction" of the statute. Port Authority, 495 U.S. at 305, 110 S.Ct. at 1873. The overwhelming implication of the statute is that by agreeing to participate in the Randolph-Sheppard program, states have waived their sovereign immunity to enforcement of such awards in federal court.
 
 II. Arbitral Award
 
 35
 The State contests the arbitral award on a number of grounds. All of these arguments are without merit.
 
 
 36
 A. Due process and judicial review under the APA
 
 
 37
 In its federal complaint, the State alleged that the arbitral proceedings violated due process in several respects. Because the State is not a "person" for the purposes of the Fifth Amendment, the State's reliance on the Due Process Clause was misplaced. See South Carolina v. Katzenbach, 383 U.S. 301, 323-24, 86 S.Ct. 803, 815-16, 15 L.Ed.2d 769 (1966). The State should have invoked the judicial review provisions of the APA, which the Randolph-Sheppard Act designates as imposing the proper standard for evaluating an arbitral award. 20 U.S.C. 107d-2(a). Under the APA, an agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); see In re Transcon Lines, 89 F.3d at 563. The district court evaluated the State's claims under the APA standard and rejected each in turn. We affirm the district court's decision.
 
 
 38
 First, the State contends that the selection of Humphreys as a panel member was inappropriate because he had written a letter to State officials in 1990, at the request of Martin's former attorney. The State maintains that Humphreys's presence on the panel created "evident partiality," in violation of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2). Even if the FAA were applicable here, because Humphreys's prior involvement with Martin was fully disclosed, the State has not made the required showing of "actual bias" by "specific facts which indicate improper motives." Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir.) (quotations and citation omitted) (upholding award of arbitration panel consisting entirely of employees and authorized dealers of one party), cert. dismissed, --- U.S. ----, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996). Moreover, the Randolph-Sheppard Act itself permits at least a minimal degree of partiality by allowing each party to select a panel member. 20 U.S.C. § 107d-2(b)(1). Rather than prohibiting individuals with pre-existing relationships from becoming panel members, the Act instead seeks to neutralize any bias by requiring the parties to agree on a third panel member, the chair. Id. Viewed in light of these provisions, the panel's refusal to disqualify Humphreys was not arbitrary, capricious or an abuse of discretion.
 
 
 39
 Second, the State argues that the panel abused its discretion by denying the State's request for a 60-day continuance. Yet there is no evidence that the denial was improper. The parties had agreed to the hearing date five months in advance. In addition, the panel denied the continuance a full two months before the scheduled date, leaving the State ample time to prepare. Accordingly, we conclude that the panel's decision was not arbitrary, capricious, or an abuse of discretion.
 
 
 40
 The State's third contention, that the panel improperly admitted the expert testimony of McDaniel, Martin's former lawyer, is also without merit. McDaniel's testimony, which concerned the legal requirements of the Randolph-Sheppard Act, was relevant. The State had the opportunity to demonstrate any bias McDaniel may have had on cross-examination. It was not arbitrary, capricious, or an abuse of discretion for the panel to admit McDaniel's testimony.
 
 
 41
 We affirm the district court's decision that the arbitration proceedings complied with the APA.
 
 
 42
 B. The State's post-judgment motion to amend its complaint
 
 
 43
 The State moved to amend its complaint under Rule 15(a) of the Federal Rules of Civil Procedure after the district court issued a final judgment in this case. Because it had improperly framed its procedural objections to the arbitration as due process challenges, the State sought to restate its claims under the APA. In addition, the proposed amended complaint contained new allegations forming the basis for additional claims.
 
 
 44
 While Rule 15(a) establishes that leave to amend should be "freely given," post-judgment motions to amend are treated with greater skepticism than pre-judgment motions. See Charles Alan Wright & Arthur Miller, 6 Federal Practice and Procedure § 1489 (1990). The likelihood that amendment will cause undue delay in the proceedings is a legitimate rationale for denying a motion to amend. See Janicki, 42 F.3d at 566. After a judgment has been issued, the conclusion that amendment will cause undue delay is particularly justified. See id. at 566-67. Here, the district court treated the State generously, analyzing its claims under the proper legal standard even though that standard was not articulated in the complaint. Moreover, the State had ample opportunity to file an amended complaint with new allegations before the court issued its final judgment. Under these circumstances, it was not an abuse of discretion for the court to refuse to allow the State to expand its case after a final decision had been made.
 
 CONCLUSION
 
 45
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The parties do not argue, and we do not consider, the question of whether Congress abrogated the sovereign immunity of states participating in the Randolph-Sheppard program
 
 
 [2]
 While the Supreme Court recently has narrowed the circumstances in which Congress has the authority to abrogate sovereign immunity, even when Congress's intent to do so is explicit, the Court's ruling does not affect the "unremarkable, and completely unrelated" matter of state waiver. See Seminole Tribe v. Florida, --- U.S. ----, ----, 116 S.Ct. 1114, 1128, 134 L.Ed.2d 252 (1996)