**US WEST COMMUNICATIONS, INC., Plaintiff,**

v.

**TCG SEATTLE, et al., Defendants.**

No. C97–354WD.

United States District Court, W.D. Washington.

July 24, 1997.

Sherilyn Christine Peterson, Kirstin S. Dodge, Perkins Coie, Bellevue, WA, Phillip J. Roselli, US West Law Dept., Denver, CO, for Plaintiff.

Gregory J. Kopta, Davis Wright Tremaine, Seattle, WA, Wendell H. Goddard, Paul M. Gordon, Gordon & Goddard, Oakland, CA, for TCG Seattle.

Shannon E. Smith, Attorney General's Office, Utilities & Transportation, Olympia, WA, for Sharon L. Nelson, Richard Hemstad, William P. Gillis.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Theodore Hirt, U.S. Dept. of Justice, Civil Div., Federal Programs Branch, Washington, DC, for U.S.

Washington Utilities and Transportation Com'n, Secretary, WUTC, Olympia, WA, pro se.

## ORDER ON MOTION OF UNITED STATES AND FCC TO INTERVENE AND COMMISSIONERS' MOTION TO DISMISS

DWYER, District Judge.

Plaintiff U.S. West Communications, Inc. ("US West") seeks review of determinations made by the Washington Utilities and Transportation Commission ("WUTC") in approving an interconnection agreement entered into pursuant to the Telecommunications Act of 1996. 47 U.S.C. § 252(e)(6) purports to grant this court authority to conduct such review:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section.

47 U.S.C. § 252(e)(6). US West has styled this suit as an *Ex parte Young* claim, naming the individual WUTC commissioners in their official capacities as defendants.[1] The commissioners have moved to dismiss for lack of jurisdiction, claiming Eleventh Amendment immunity. The United States and the Federal Communications Commission ("FCC") have moved to intervene to defend the constitutionality of section 252(e)(6). The motions have been thoroughly briefed and oral argument is not necessary.

## I. THE UNITED STATES' AND THE FCC'S MOTION TO INTERVENE

Federal Rule of Civil Procedure 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the . . . subject of the action and . . . is so situated that the disposition of the action may ·as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. Proc. 24(a). Where, as here, "the constitutionality of . . . [an] Act of Con-

---

1. The Eleventh Amendment does not prohibit a federal court from granting prospective injunctive relief against state officials to end a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

gress affecting the public interest is drawn in question" 28 U.S.C. § 2403(a) provides the United States with an unconditional right to intervene. The commissioners do not dispute this. The United States' motion to intervene is granted.

■ The FCC, however, has no statutory entitlement to intervention. Because the United States is entitled to intervene, the FCC's interest in defending the constitutionality of section 252(e)(6) will be adequately represented. The FCC is thus not entitled to intervene as of right under Rule 24(a).

■ The FCC also seeks permissive intervention under Rule 24(b). That rule permits a court to grant intervention where (1) a statute confers a conditional right to intervene; or (2) when the applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. Proc. 24(b).[2] The FCC has no statutory entitlement to intervention, conditional or otherwise. Nor does the FCC assert a "claim or defense" in an action which has a question of law or fact in common with this action. The FCC's motion to intervene is denied.

## II. THE MOTION TO DISMISS

■ The basis of the commissioners' motion to dismiss is that the Eleventh Amendment bars these suits. The Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State.

Drawing on principles of sovereign immunity, the Supreme Court has construed the Amendment "to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89,

100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)) (internal quotation marks omitted). State immunity extends to state agencies, such as the WUTC, and state officials, such as the commissioners, who act on behalf of the state and can therefore assert the state's sovereign immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46, 113 S.Ct. 684, 686–89, 121 L.Ed.2d 605 (1993); *N.R.D.C. v. Cal. D.O.T.*, 96 F.3d 420, 421 (9th Cir.1996).

■ The Eleventh Amendment, however, is not absolute; there are "certain well-established exceptions" to its reach. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). "For example, if a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Id.* Further, the Eleventh Amendment does not bar a suit for prospective injunctive relief against a state official acting in violation of federal law. *N.R.D.C.*, 96 F.3d at 422 (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

The parties differ over whether the present suit can proceed under *Ex parte Young*. That is a substantial question, compounded by the Supreme Court's recent decisions in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and *Idaho v. Coeur d'Alene Tribe of Idaho*, —— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). But it is a question the court need not resolve because this case is controlled by "the unremarkable, and completely unrelated, proposition that the States may waive their sovereign immunity." *Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1128.

■ "A state will be deemed to have waived its sovereign immunity when (1) the state expressly consents to suit; (2) a state statute or constitution so provides; or (3) Congress clearly intended to condition the state's participation in a program or activity on the state's waiver of immunity." *Premo v. Martin*, 119 F.3d 764 (9th Cir.1997) (citation omitted). A state will be deemed to

---

2. The rule also contains a provision for agency intervention where "a party to an action relies for ground of claim or defense upon any statute

or executive order administered by a federal or state governmental officer or agency." That provision is not relevant here.

have waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Id.* (quoting *Port Authority*, 495 U.S. at 305, 110 S.Ct. at 1873) (alteration in original).

The State of Washington has not expressly waived its immunity by state statute or otherwise. The question is whether Congress conditioned state participation in the Telecommunication Act's interconnection agreement arbitration and approval process on the states' consent to federal judicial review of the states' participatory actions. This requires examination of the terms of the Act.

In order to foster the growth of open competition in local telephone markets, section 251 of the Act requires "incumbent local exchange carriers" (1) to permit other telecommunication carriers to "interconnect" with the incumbent's network (which permits calls to carry between the incumbent's network and the interconnecting carrier's); (2) to provide other carriers "unbundled" access to network elements (so interconnecting carriers can repackage elements and offer them to the public as a competitive service); and (3) to sell to new entrants at wholesale prices all telecommunications services offered to retail customers. 47 U.S.C. § 251(c)(2)-(4). Both incumbents and new entrants are required to negotiate interconnection agreements in good faith. 47 U.S.C. § 251(c)(1).

Congress contemplated that states would play an active regulatory role in the negotiation and approval process. Companies may enter agreements through voluntary negotiation, or may petition the appropriate "State commission" to mediate or arbitrate disputes. 47 U.S.C. § 252(a); (b). All agreements, whether reached by negotiation, mediation or arbitration, are subject to state commission approval. 47 U.S.C. § 252(e).

■ Congress, of course, cannot "require States to govern according to Congress' instructions." *New York v. United States,* 505 U.S. 144, 162, 112 S.Ct. 2408, 2421, 120 L.Ed.2d 120 (1992). The Act thus permits states to "opt out" of their regulatory roles. Section 252(e)(5) provides:

If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission [FCC] shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission.

47 U.S.C. § 252(e)(5).

If the state commission does act, however, the Act makes clear that the commission's actions will be reviewable in federal court. Section 252(e)(6) provides that where a state commission makes a determination regarding an agreement, any aggrieved party "may bring an action in an appropriate Federal district court to determine whether the agreement meets the requirements" of the Act. Further, the Act prohibits state court review of state commission actions in approving or rejecting agreements. See 47 U.S.C. § 252(e)(4) ("No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section.").

■ The "overwhelming implication" of this statutory structure is that Congress conditioned state participation in the interconnection agreement negotiation, arbitration and approval process on consent to federal judicial review of the state's participatory actions. A state is permitted—but not required—to act as the principal regulatory body in the process. But the statute makes clear that if a state accepts Congress's invitation, its actions will be reviewable in federal court. There is "no room for any other reasonable construction" of the statute. *Port Authority,* 495 U.S. at 305, 110 S.Ct. at 1873. By participating in the arbitration and approval process, Washington consented to review of its actions.

Support for this conclusion is found in the Ninth Circuit's recent decision in *Premo v. Martin,* 119 F.3d 764, —— (9th Cir.1997). In *Premo,* the question was whether dam-

ages awarded by an arbitral panel under the Randoph–Sheppard Vending Stand Act, 20 U.S.C. § 107–107f, could be enforced against the state in federal court. The Court of Appeals concluded that such awards were enforceable against the state in federal court because the state, by participating in the Randolph–Sheppard program, had waived its sovereign immunity from such enforcement suits. *Id.* 119 F.3d at ——. The statute, the court explained, required participating states to agree to certain conditions, including the submission of certain grievances to "binding" arbitration. *Id.* The statute further provided that the arbitration decisions "shall be subject to appeal and review as final agency action" under chapter 7 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *Id.* "[B]y requiring the states to submit to 'binding' arbitration, and by providing for appeal and review under the APA," the court held, "the Randolph–Sheppard Act unequivocally guarantees that arbitration awards will be judicially enforceable." *Id.* Further, even though the statute did not designate federal courts as the fora for enforcement of such awards, and it was possible that awards could be enforced in state court, the court concluded that by participating in the program the state had consented to enforcement suits in federal court. *Id.*

The case for waiver here is stronger than that in *Premo.* The Randolph–Sheppard Act implies that arbitration awards are enforceable in federal court by stating that such awards are "binding" and that appeal and review may be had under the APA. It does not say explicitly that if the state participates in the program it is subject to suit in federal court. The Telecommunications Act, on the other hand, expressly states that state commission action is reviewable in federal court and nowhere else. 47 U.S.C. § 252(e)(4); (5). The implication that Congress conditioned state participation in the interconnection agreement process on waiver could hardly be clearer.

Accordingly, by participating in the interconnection agreement process the State of Washington has waived its Eleventh Amendment immunity from federal judicial review of its actions. The commissioners' motion to dismiss on Eleventh Amendment grounds is denied.

A procedural matter remains. The commissioners argue that the present suit is really a petition for judicial review of the WUTC's actions, and that the WUTC is a necessary party. This contention is correct. Section 252(e)(6) is essentially an intersovereign judicial review provision. US West's complaint asks the court to "remand the case to the commissioners for further proceedings that adhere to the declarations" it seeks. See Complaint at 33. If this were a petition for review of a federal agency action, the agency would have to be named a respondent. See Fed. R. App. P. 15(a); *Ingalls Shipbuilding v. Director, Office of Workers' Comp. Prog.,* —— U.S. ——, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997). The same should hold true where Congress has provided for federal review of actions taken by state agencies in implementing a federal legislative scheme. The WUTC should thus be joined pursuant to Fed. R. Civ. Proc. 19(a). Because the state has waived its sovereign immunity to this suit, the Eleventh Amendment poses no barrier to joinder.

### III. CONCLUSION

The United States' motion to intervene is granted. The FCC's motion to intervene is denied. The commissioners' motion to dismiss on Eleventh Amendment grounds is denied. The WUTC is joined as a party defendant pursuant to Fed. R. Civ. Proc. 19(a).