**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY BIRD,
            *Petitioner-Appellee*,

v.

OREGON COMMISSION FOR THE
BLIND, an agency of the State of
Oregon,
            *Respondent-Appellant*,

v.

U.S. DEPARTMENT OF EDUCATION,
Rehabilitation Services
Administration,
            *Respondent-Appellee*.

No. 20-36066

D.C. No.
3:18-cv-01856-
YY

OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernández, Chief District Judge, Presiding

Argued and Submitted November 8, 2021
Portland, Oregon

January 7, 2022

Before:  Susan P. Graber and Morgan Christen, Circuit Judges, and Raner C. Collins,[*] District Judge.

Opinion by Judge Collins

---

**SUMMARY**[**]

**Sovereign Immunity**

The panel reversed the district court's denial of sovereign immunity to Oregon Commission for the Blind ("OCB") in a case in which the district court affirmed an arbitration panel's award of compensatory relief, attorney's fees, and costs in favor of petitioner Jerry Bird.

Bird and other blind vendors filed a formal complaint with OCB seeking arbitration, prospective relief, and attorney's fees as a consequence of OCB's alleged mishandling of vending contracts and representation of blind vendors' interests.  The arbitration panel denied relief, and Bird filed a petition for federal review in Oregon District Court. The district court relied on *Premo v. Martin*, 119 F.3d 764 (9th Cir. 1997) (holding that Eleventh Amendment sovereign immunity did not apply to an arbitration panel's decision under the Randolph-Sheppard Act ("RSA")), and held that the Eleventh Amendment did not protect OCB from liability for compensatory damages.

---

[*] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that neither the RSA nor the parties' operating agreements unequivocally waived a state's sovereign immunity from liability for monetary damages, attorney's fees, or costs. The panel joined the Sixth and Tenth Circuits, and concluded that the holding in *Premo* was no longer binding. Subsequent to *Premo*, the Supreme Court decided *Sossamon v. Texas*, 563 U.S. 277 (2011) (analyzing whether a state waives sovereign immunity from compensatory relief through acceptance of federal funding under the Religious Land Use and Institutionalized Persons Act of 2000). The panel held that *Sossamon*'s declaration that a waiver of sovereign immunity must be explicit within the text of the statute left no room for *Premo*'s reliance on constructive waiver. An agreement to arbitrate all disputes simply did not unequivocally waive sovereign immunity from liability for monetary damages. The panel concluded that OCB did not waive immunity from compensatory damages, and the district court's decision to the contrary was in error. Insofar as Bird argued that the operating agreements constituted waiver, those agreements, too, incorporated the text of the RSA and contained no express waiver of immunity from money damages.

The panel held that because no provision of the RSA or the operating agreements provided for attorney's fees, Bird was not entitled to attorney's fees.

## COUNSEL

Christopher A. Perdue (argued), Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Oregon Department of Justice, Salem, Oregon; for Respondent-Appellant.

Kristian Roggendorf (argued), The Zalkin Law Firm, P.C., San Diego, California; Roger K. Harris, Harris Berne Christensen LLP, Portland, Oregon; for Petitioner-Appellee.

No appearance for Respondent-Appellee.

## OPINION

R. COLLINS, District Judge:

Respondent Oregon Commission for the Blind ("OCB") appeals the district court's affirmation of an arbitration panel's award of compensatory relief, attorney's fees, and costs in favor of Petitioner Jerry Bird. We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing the denial of sovereign immunity de novo, *Ray v. County of Los Angeles*, 935 F.3d 703, 708 (9th Cir. 2019), we reverse. Neither the Randolph-Sheppard Act ("RSA") nor the parties' operating agreements unequivocally waive a state's sovereign immunity from liability for monetary damages, attorney's fees, or costs. In coming to this conclusion, we join the Sixth and Tenth Circuits and conclude that our holding in *Premo v. Martin*, 119 F.3d 764 (9th Cir. 1997), is no longer binding.

## I. Factual and Procedural History

The RSA creates a cooperative federal-state program that gives preference to blind applicants for vending licenses at federal facilities. 20 U.S.C. §§ 107–107f. At the federal level, the Secretary of Education is responsible for administering the Act. 20 U.S.C. §§ 107(b), 107a(a). At the state level, state licensing agencies designated by the Secretary of Education implement the program. 20 U.S.C. § 107a(a)(5). Under the RSA, a blind licensee who is dissatisfied with "any action arising from the operation or

administration of the vending facility program" may request an evidentiary hearing before the licensing agency. 20 U.S.C.§ 107d-1(a). If the licensee disagrees with the hearing's result, he or she may file a complaint with the Secretary of Education, who will summon an arbitration panel to resolve the dispute. *Id.* The arbitration panel's decision is "final and binding on the parties" and is reviewable by the district court as a final agency decision under the Administrative Procedures Act. *Id.* §§ 107d-1, 107d-2(a).

Oregon's mini-RSA is the state equivalent of the RSA, applied to licenses at state buildings. *See* Or. Rev. Stat. §§ 346.510–346.570. OCB is a state licensing agency that executes the state's version of the RSA by obtaining vending permits in state buildings, licensing blind vendors, and assigning blind vendors to vending sites. *See id.* §§ 346.120, 346.540. "State participation in the program is voluntary, and a state agency seeking to be designated as a[n RSA licensing agency] must apply to the Secretary of Education and agree to a number of conditions." *Premo*, 119 F.3d at 767. Oregon agreed to have the OCB "[s]ubmit to an arbitration panel (upon its being convened by the Secretary [of Education]) those grievances of any vendor which the vendor believes to be unresolved after a full evidentiary hearing."

Bird is a blind vendor who gave up his vending contract at the Oregon Lottery building in 2005 in response to OCB's promise to assign him to the vending contracts at Chemeketa Community College ("CCC") and Santiam Correctional Facility. Despite its promise, OCB did not assign Bird to those locations, choosing instead to contract with another vendor.

In 2006, Bird filed a grievance alleging that he should have been assigned the vending contract at CCC. In 2009, an arbitration panel reviewed Bird's grievance and determined that OCB had violated the RSA. The arbitration panel ordered OCB to: (1) "pay Bird an amount equal to the net revenues from vending at CCC"; (2) "award Bird the vending contract at CCC"; and (3) consult with an elected committee of blind vendors regarding any further actions for additional vending that might become available at CCC. OCB did not appeal that decision.

Bird later realized that OCB did not control all the vending contracts at CCC. Consequently, Bird asked OCB to commence "whatever action" was necessary to enforce CCC's compliance with state and federal laws. In March 2011, OCB filed a lawsuit against CCC. In response, CCC cancelled all vending contracts and voided the agreement with OCB in May 2011. CCC then opened up its vending opportunities for proposals. OCB submitted a response, but CCC selected a private vending company that offered CCC a percentage of the revenues.

In July 2011, Bird and six other blind vendors filed a formal complaint with OCB seeking arbitration, prospective relief, and attorney's fees as a consequence of OCB's alleged mishandling of vending contracts and representation of blind vendors' interests. The arbitration panel denied relief, and Bird filed a petition for review in the Oregon District Court. The district court concluded that the Eleventh Amendment did not protect OCB from liability for compensatory damages. *Bird v. U.S. Dep't of Educ.*, No. 3:14-CV-00843-YY, 2017 WL 2365110, at *6 (D. Or. May 31, 2017). The district court's decision relied primarily upon the Ninth Circuit holding in *Premo*.

In *Premo*, we concluded that Eleventh Amendment sovereign immunity did not apply to an arbitration panel's decision under the RSA, reasoning "[i]t has been widely recognized" that the RSA allows for "arbitration panels to award compensatory relief" because, when the arbitration provision was formulated, it was intended to resolve blind vendors' disputes, which necessarily included "back pay and other forms of compensatory relief." 119 F.3d at 769–70 (first citing *Tenn. Dep't of Hum. Servs. v. U.S. Dep't of Educ.*, 979 F.2d 1162, 1165 (6th Cir. 1992); then citing *Del. Dep't of Health & Soc. Servs. v. U.S. Dep't of Educ.*, 772 F.2d 1123, 1136–37 (3rd Cir. 1985)). We permitted judicial enforcement of the arbitration decisions granting compensatory relief because the RSA provided that *any* dispute could be arbitrated and that the arbitration panel's decision would be binding on the parties. *Id.* Therefore, although waiver of sovereign immunity from compensatory relief was *not* expressly contained within the statutory text, we concluded a constructive waiver was sufficient given the "overwhelming implication of the statute." *Id.* at 770–71.

After we issued *Premo*, however, the Supreme Court decided *Sossamon v. Texas*, 563 U.S. 277 (2011). In *Sossamon*, the Court analyzed whether a state waives sovereign immunity from compensatory relief through acceptance of federal funding under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 803, 42 U.S.C. § 2000cc, *et seq*. *Id.* at 280. Although RLUIPA provides for "appropriate relief against a government" for violations of that statute, the Court held that a state's waiver of sovereign immunity "must be 'unequivocally expressed' in the text of the relevant statute" and cannot be inferred from context. *Id.* at 282, 284 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). In addition, the Court ruled that a state's waiver

of sovereign immunity from compensatory relief must be unambiguous, regardless of the waiver of sovereign immunity from any other form of relief. *Id.* at 285. Therefore, the Court concluded, RLUIPA's reference to "appropriate relief" did not waive the state's sovereign immunity as to damages because the reference was ambiguous. *Id.* at 286.

The district court here considered *Sossaman* but ultimately distinguished the binding-arbitration text in the RSA from the text found in *Sossamon*. *Bird*, 2017 WL 2365110, at *6. The court concluded that the Eleventh Amendment did not preclude liability because states participating in the RSA grant "explicit consent" to binding arbitration of *all* disputes. *Id.* The district court considered Oregon's consent to be explicit because of *Premo*'s observation that arbitration is commonly understood to permit compensatory relief. *Id.* Dismissing *Sossamon* as inapposite, the court remanded the matter to the arbitration panel for a determination of compensatory relief and attorney's fees and costs, if appropriate. *Id.* at *8. The arbitration panel, in turn, granted Bird both compensatory relief and attorney's fees and costs.

Bird petitioned for review of the arbitration panel's second decision, and OCB filed a cross-petition arguing that OCB had not waived sovereign immunity from liability by participating in the RSA. The matter was referred to a magistrate judge, who issued Findings and a Recommendation that the district court reaffirm its original analysis about sovereign immunity from liability. Expanding upon the district court's previous order, the magistrate judge stated that the decision in *Premo* was binding and its reasoning "unequivocal." The magistrate judge noted that the Ninth Circuit was not alone in reaching this conclusion;

the Third Circuit came to the same conclusion in *Delaware Department of Health and Social Services*, 772 F.2d at 1138.

In so reasoning, the magistrate judge dismissed OCB's argument that the Supreme Court's decision in *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743 (2002) (*FMC*), was irreconcilable with *Premo*. In *FMC*, the Supreme Court determined that state sovereign immunity prevented an individual from forcing South Carolina to adjudicate a dispute in front of the Federal Maritime Commission for violations of the Shipping Act of 1984. 535 U.S. at 753. The magistrate judge concluded that *FMC* did not concern a state that voluntarily participated in a statutory scheme such as the RSA, and therefore *FMC* was not relevant to the analysis in this case.

In addition, the magistrate judge reiterated that *Sossamon* considered the ambiguity of the phrase "appropriate relief" in RLUIPA, not the RSA's commitment to binding arbitration of all disputes. The magistrate judge observed that it was well known at the time of *Premo* that a waiver cannot be inferred but must be explicitly stated or overwhelmingly implied. Still, the *Premo* court concluded that the implications of the RSA's text overwhelmingly demonstrate a participating state's waiver of sovereign immunity from liability. Thus, the magistrate judge decided that *Premo* remained binding precedent. The district court adopted the magistrate judge's Findings and Recommendation.

On appeal, OCB challenges the arbitration panel's award and seeks review of the district court's determination that participating in the RSA constitutes a waiver of sovereign immunity from compensatory relief and attorney's fees and costs.

## II. Discussion

A state cannot be sued without its consent. *See Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); U.S. Const. amend. XI. In general, constructive waiver is an insufficient indication of waiver of a state's sovereign immunity. *Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680–86 (1999). Waiver of sovereign immunity must be unequivocally stated within the relevant statute and must be specific as to the type of relief waived. *Sossamon*, 563 U.S. at 284–85. If ambiguous, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). In light of the Supreme Court's holding in *Sossamon*, we are faced with the question whether *Premo* remains good law. We hold that it does not.

A circuit court may revisit controlling decisions only when a subsequent circuit or Supreme Court decision makes the two "clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent. The intervening higher precedent must be 'clearly inconsistent' with the prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (citations omitted).

In *Premo*, we found constructive waiver of sovereign immunity, and held that it was common knowledge that arbitration included compensatory relief at the time the arbitration provision was added to the RSA. 119 F.3d at 769–770. But *Sossamon*'s declaration that a waiver must be

explicit within the text of the statute leaves no room for *Premo*'s reliance on constructive waiver.

Although *Premo* found support in decisions from the Third and Sixth Circuits, *Premo*, 119 F.3d at 768, *Sossamon* changed this analysis. Those pre-*Sossamon* cases are also premised upon constructive waiver. *See Del. Dep't of Health & Soc. Servs.*, 772 F.2d at 1137–38; *Tenn. Dep't of Hum. Servs.*, 979 F.2d at 1166–68. In *Delaware*, for example, the Third Circuit concluded that the legislative history of the RSA and common meaning of the term "arbitration" unambiguously demonstrated that a state participating in the RSA agreed to waive sovereign immunity from monetary damages. 772 F.2d at 1136. But the Sixth Circuit subsequently reversed its decision on sovereign immunity from monetary damages and determined that, although Ohio voluntarily participated in the RSA program, "[t]he RSA does not mention any type of available remedy." *Ohio v. U.S. Dep't of Educ.*, 986 F.3d 618, 630 (6th Cir. 2021). The Sixth Circuit noted that the text of the RSA was even more ambiguous than the term "appropriate relief," which was found to be an insufficient expression of waiver in *Sossamon*. *Id.* at 629. As a result, the Sixth Circuit held that Ohio had not waived immunity from monetary damages. *Id.* at 630; *see also Tyler v. United States Dep't of Educ. Rehab. Servs. Admin.*, 904 F.3d 1167, 1172 (10th Cir. 2018) (holding "state sovereign immunity bars RSA arbitration panels from adjudicating complaints filed by a private party against a nonconsenting State). Thus, the cases upon which *Premo* relied are no longer controlling.

In conclusion, *Premo*'s analysis is clearly irreconcilable with *Sossamon*'s conclusion that sovereign immunity from monetary relief may not be waived through context and must be "'unequivocally expressed' in the text of the relevant

statute." 563 U.S. at 284. After *Sossamon*, we can no longer assume waiver from contextual clues such as congressional intent or from a common understanding of the meaning of arbitration. We are bound by the holding in *Sossamon* and must conclude that *Premo*'s irreconcilable analysis is precluded. An agreement to arbitrate all disputes simply does not unequivocally waive sovereign immunity from liability for monetary damages. As a result, OCB did not waive immunity from compensatory damages, and the district court's decision to the contrary was in error.

Insofar as Bird argues that the operating agreements constituted waiver, those agreements, too, incorporated the text of the RSA and contained no express waiver of immunity from money damages. The agreements are, therefore, not proof that the state intended to permit compensatory relief. We now turn to the remaining question of attorney's fees.

### III. Attorney's Fees and Costs

The American Rule is the "bedrock principle" applied to the award of attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010). Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, *unless a statute or contract provides otherwise*." *Id.* at 253 (citations omitted) (emphasis added). Whether a statute "limits the availability of attorney's fees to a 'prevailing party' is a question of statutory construction." *Id.* at 251. Federal courts "will not deviate from the American rule 'absent explicit statutory authority.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001)).

Because no provision of the RSA or the operating agreements provides for attorney's fees, Bird is not entitled to attorney's fees.

**REVERSED and REMANDED.**