TENNESSEE DEPARTMENT
OF HUMAN SERVICES,
Plaintiff–Appellee,

v.

UNITED STATES DEPARTMENT
OF EDUCATION, Defendant–
Appellee,

Wayne Hinton, Defendant–Appellant.

No. 91–5768.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1992.

Decided Nov. 18, 1992.

Dianne Stamey Dycus, Asst. Atty. Gen. (argued and briefed), Charles W. Burson, Atty. Gen., Office of the Atty. Gen. of Tennessee, Nashville, Tenn., for plaintiff-appellee Tenn. Dept. of Human Services.

Jeffrey A. Rosen, U.S. Dept. of Educ., Office of Gen. Counsel, Michael S. Raab (briefed), William Kanter, U.S. Dept. of Justice, Civil Div. Appellate Staff, Washington, D.C., Gary Humble, Asst. U.S. Atty., Jerry G. Cunningham, U.S. Atty., Office of the U.S. Atty., Chattanooga, Tenn., for defendant-appellant U.S. Dept. of Educ.

Fielding H. Atchley, Jr. (argued and briefed), Dietzen, Atchley & Wright, Chattanooga, Tenn., for defendant-appellant Wayne Hinton.

Before: GUY, NORRIS, and BATCHELDER, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

A blind vendor appeals the district court's judgment that set aside, as violative of the Eleventh Amendment, a federal arbitration panel's award of retroactive damages against a state agency under the Randolph–Sheppard Act.

### I.

This case requires us to decide whether arbitration awards for retroactive damages against state agencies under the Randolph–Sheppard Vending Stand Act, 20 U.S.C. §§ 107–107f, violate the Eleventh Amendment. We begin our analysis with a brief overview of the statutory scheme.

The Randolph–Sheppard Act was enacted in order to provide employment opportunities for the blind. The Act grants priority to those blind persons who desire to operate vending facilities on federal property. 20 U.S.C. § 107(b). The Act divides responsibility for the blind vendor program between the state and federal agencies. The Secretary of Education is responsible for interpreting and enforcing the Act's provisions, and more specifically, for designating state licensing agencies. 20 U.S.C. §§ 107a(a)(5), 107b; 34 C.F.R. §§ 395.5, 395.8. A person seeking a position as a blind vendor applies to the designated state agency and is licensed by that agency. The state agency in turn applies to the federal government for the placement of the licensee on federal property. 20 U.S.C. § 107b. Once the state and the federal government have agreed on an appropriate location for the vending facility, the state licensing agency is responsible for equipping the facility and furnishing the initial stock and inventory. 20 U.S.C. § 107b(2).

The blind vendor thereafter operates as a sole proprietor who is entitled to the profits of the vending facility and who is responsible for the facility's losses.

The Act requires that if the state licensing agency operates vending machines that directly compete[1] with a vending facility operated by a blind vendor, then a percentage of the income from such competing machines must be given to the blind vendor licensed to do business on that property. 20 U.S.C. § 107d–3. If no licensee is operating a facility on the property, the income from state-operated vending machines is used for a variety of purposes that benefit all blind vendors in the state program. 20 U.S.C. § 107d–3(c).

In order to resolve disputes arising under the Act, both administrative and judicial remedies are available for licensed blind vendors. The Secretary of Education may decertify a state licensing agency that refuses to cooperate with the Secretary. 34 C.F.R. § 395.17. In all other situations, the Secretary must rely on a blind vendor to file a complaint in order to enforce the Act's substantive provisions. If a blind vendor has a complaint regarding the state's operation of the program, he or she may request an evidentiary hearing before the state licensing agency and, if dissatisfied with the outcome of the hearing, may ask the Secretary to convene an arbitration panel to resolve the dispute. 20 U.S.C. §§ 107d–1(a), 107d–2(b)(1). An arbitration panel's decision is subject to review as a final agency action. 20 U.S.C. § 107d–1(a).

From 1978 until 1986, Wayne Hinton was a blind vendor at the Tennessee Valley Authority's Watts Bar Nuclear Power Plant, a federal facility located in Tennessee. He was licensed by the Tennessee Department of Human Services (TDHS), the state agency designated by the Secretary. TDHS issued two permits to operate vending facilities at the plant. One permit authorized Hinton to conduct vending in the "power site." The second permit au-

thorized vending in the "construction site." Vending machines were installed at the construction site in late 1978 or early 1979, and were operated by sighted vendors. TDHS used the income from the machines to purchase health insurance for blind vendors.

This dispute began in August 1984 when Hinton claimed the income from the construction site machines. Hinton asserted that the construction site was on the same premises as his stand and therefore was in direct competition with his stand. Acting upon Hinton's request for an evidentiary hearing before TDHS, the state hearing officer determined that the construction site was part of the same property as the power site, and was in competition with it. The state hearing officer then issued an order granting Hinton's claim to past and future income from the construction site machines. Thereafter, the Commissioner of TDHS reversed the award, finding that the two sites were separate properties, and entered a final order denying Hinton's claims.

Following this determination, Hinton filed a complaint with the Secretary of Education requesting an arbitration panel. The Secretary refused the request, noting that sovereign immunity precluded retroactive relief, and that prospective relief no longer was available because the vending facilities at the construction site recently were assigned to other blind vendors. Hinton filed an action in the district court to compel the Secretary to convene the arbitration panel. The district court determined that the Act created a mandatory duty and ordered the Secretary to convene the panel. *Hinton v. United States Dep't of Educ.*, 700 F.Supp. 21, 23 (E.D.Tenn. 1988).

The arbitration panel determined that the power plant was a single property, and that the vending facilities were in direct competition with Hinton's vending facility. Ac-

---

**1.** Direct competition "means the existence of any vending machines or facilities operated on the same premises as a blind vending facility except that vending machines or facilities operated in areas serving employees the majority of whom normally do not have direct access to the blind vending facility shall not be considered in direct competition with the blind vending facility." 20 U.S.C. § 107d–3(b)(1).

cordingly, the panel ordered the state agency to pay Hinton the construction site vending machine income accrued from 1978 through 1986. The panel also awarded Hinton interest and attorneys' fees.

TDHS filed a petition for review in the United States District Court for the Eastern District of Tennessee, contending that the panel's factual findings were erroneous and that the Eleventh Amendment barred the award. The complaint named Hinton and the United States Department of Education as defendants, but the Department filed a memorandum in support of the state agency's position.

After all three parties moved for judgment on the pleadings, the district court granted judgment to TDHS and the Department of Education and vacated the arbitration panel's award. The district court determined that the award violated the Eleventh Amendment's restriction on damage suits against a state because the Act does not contain an unambiguously expressed congressional intent to abrogate the states' Eleventh Amendment sovereign immunity, as required by *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Hinton appeals that decision.

## II.

As a preliminary matter, the Department of Education urges us to avoid the Eleventh Amendment issue by finding that the Randolph–Sheppard Act does not authorize an arbitration panel to award retroactive damages against a state agency. Section 107d–1(a) of the Randolph–Sheppard Act provides, in relevant part:

Any blind licensee who is dissatisfied with *any* action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing.... If such blind licensee is dissatisfied with *any* action taken or decision rendered as a result of such hearing, he may file a complaint with the

Secretary who shall convene a panel to arbitrate the dispute.... and the decision of such panel shall be final and binding on the parties except as otherwise provided in this Act.

20 U.S.C. § 107d–1(a) (emphasis added).

Similarly, section 107b(6) contains language requiring the state agency to provide a hearing for a blind vendor "dissatisfied with any action arising from the operation or administration of the vending facility program" and to agree to submit unresolved grievances to arbitration. The natural reading of these provisions is that the arbitration panel may consider and resolve any complaint of a vendor arising out of the program, including a complaint that the state agency has taken money to which the vendor is entitled. Congress added these provisions to the Act in 1974. Pub.L. No. 93–651, 89 Stat. 2–7 (1974). While the legislative history does not contain any statement regarding the scope of relief to be provided by the panel, Congress surely was aware that arbitration panels routinely awarded retroactive relief. *See Delaware Dep't of Health v. United States Dep't of Educ.,* 772 F.2d 1123, 1136–37 (3d Cir. 1985).[2]

We therefore conclude that the arbitration panel did not exceed its statutory authority in finding that Hinton was entitled to retroactive relief against the state agency. Accordingly, we must consider the extent to which the circumstances of this case implicate the Eleventh Amendment.

## III.

The Eleventh Amendment to the Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Although the language of the Eleventh Amendment appears straightforward, its

**2.** We also note that the Department of Education adopted regulations concerning the conduct of the Randolph–Sheppard arbitration panels, but placed no limits on the types of relief these panels could award. *See* 34 C.F.R. § 395.-13.

application has been both enlarged and restricted by the Supreme Court. A leading constitutional law treatise summarizes the current state of Eleventh Amendment jurisprudence:

> The eleventh amendment acts as a bar to federal jurisdiction over state governments, as such, when they are sued by anyone other than the federal government or another state. The bar applies to all types of suits for damages or retroactive relief for past wrongs, but it is not an effective barrier to forcing the state to prospectively comply with federal law. If the amendment applies, the suit may be heard in federal court with the consent of the state and, in limited circumstances, the state may be held to an implied waiver of its immunity. Congress may create federal causes of action against states without their consent when it acts pursuant to its power to enforce the fourteenth amendment. The extent to which the eleventh amendment restricts other Congressional powers has not yet been determined.

1 Ronald D. Rotunda et al., *Constitutional Law* 85 (1986).

 Not only does the language of the amendment explicitly bar suits in federal courts by citizens of other states, it also impliedly bars such suits by a state's own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This is so because the states entered the federal system with their sovereignty intact. That sovereignty limits the authority granted to the federal courts by Article III of the Constitution. *Blatchford v. Native Village of Noatak,* — U.S. —, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). Accordingly, the amendment is said to prevent a citizen from suing his own state in federal court for damages, past debts, or retroactive relief of any kind, but not for every kind of prospective relief. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). A state can waive its immunity explicitly when it opts to participate in a federal program in which Congress clearly has conditioned participation on such a waiver. *Id.* at 673–74, 94 S.Ct. at 1361; *see also Port Authority v. Feeney,* 495 U.S.

299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990); *Atascadero State Hosp.,* 473 U.S. at 247, 105 S.Ct. at 3149. The amendment does not bar Congress from granting jurisdiction to federal courts to award relief to private citizens, provided that the remedy falls within the purview of the Fourteenth Amendment, is predicated upon the enforcement power granted to Congress by section 5 of that amendment, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), and there is an unequivocal expression of congressional intent to utilize that power to overturn the constitutionally guaranteed immunity of the states. *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989); *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Although prior case law on the point was unclear, it now appears that a majority of the Supreme Court believes that Congress, when legislating pursuant to the Commerce Clause, can abrogate the immunity provided in the Eleventh Amendment and render states liable to a private citizen for money damages in a federal court. *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In order to abrogate that immunity, Congress must state its intention to do so by clear and unmistakable language in the text of the statute itself. *Id.* at 7, 109 S.Ct. at 2277.

 Hinton offers two arguments as to why the Eleventh Amendment does not extend to the arbitration panel's award: (1) the award is a decision of an executive branch arbitration panel; and (2) arbitration was a federal enforcement action as opposed to a private lawsuit.

The response of both the state agency and the Department of Education, that the amendment does apply to executive branch adjudicatory bodies, is unsupported by any authority and runs counter to the interpretation consistently given the amendment by the Supreme Court, which "has recognized that [the amendment's] greater significance lies in its affirmation that the fundamental principle of sovereign immunity lim-

its the grant of *judicial authority in Art. III."* *Pennhurst State School,* 465 U.S. at 98, 104 S.Ct. at 906 (1984) (emphasis added); *see also Blatchford,* —— U.S. at ——, 111 S.Ct. at 2581 ("the judicial authority in Article III is limited by this sovereignty"). Since the amendment applies to Article III proceedings, "[c]ourts have found no eleventh amendment bar to actions brought by federal administrative agencies pursuant to complaints of private individuals." *Ellis Fischel State Cancer Hosp. v. Marshall,* 629 F.2d 563, 567 (8th Cir.1980), *cert. denied,* 450 U.S. 1040, 101 S.Ct. 1757, 68 L.Ed.2d 237 (1981).

While the Eleventh Amendment does not apply to such an arbitration panel, it would apply in the event that a private party who wins an arbitration award petitions an Article III court for enforcement of the award. *See Georgia Dep't of Human Resources v. Nash,* 915 F.2d 1482, 1486 n. 14 (11th Cir. 1990). Thus, while the amendment may not prevent the arbitration panel from making the award, it will prevent a subsequent attempt to collect the award through the federal courts.

■ With respect to Hinton's second argument, the Eleventh Amendment does not prohibit an action by the federal government against a state, because a state implicitly surrenders its immunity to such suits when it joins the Union. *See, e.g., Blatchford,* —— U.S. at ——, 111 S.Ct. at 2582; *United States v. Texas,* 143 U.S. 621, 643–46, 12 S.Ct. 488, 493–94, 36 L.Ed. 285 (1892). The amendment does not bar such an action even if the money collected by the federal government ultimately will pass to a private person. *See, e.g., Employees of the Dep't of Pub. Health and Welfare v. Department of Pub. Health and Welfare,* 411 U.S. 279, 285–86, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973); *Marshall v. A & M Consol. Indep. Sch. Dist.,* 605 F.2d 186, 189 (5th Cir.1979).

■ Accordingly, if the Randolph–Sheppard Act authorized the Department of Education to sue the state agency in order to collect the award on Hinton's behalf, and that is what the Department proceeded to do, then Hinton's argument might be persuasive. But that is not what happened here. Instead, the Secretary merely convened the dispute resolution process set forth in the statute. Moreover, it does not follow that Hinton may collect the award himself. As the Supreme Court recently stated, "[t]he consent, 'inherent in the convention,' to suit by the United States—at the instance and under the control of responsible federal officers—is not consent to suit by anyone whom the United States might select; and even consent to suit by the United States for a particular person's benefit is not consent to suit by that person himself." *Blatchford,* —— U.S. at ——, 111 S.Ct. at 2584.

■ We conclude, therefore, that while the Eleventh Amendment does not prevent the arbitration panel from rendering its award to Hinton, any attempt by Hinton to enforce the award in federal court necessarily implicates the Eleventh Amendment.

■ That does not conclude our inquiry in this case. In enacting the Randolph–Sheppard Act, Congress conceivably may have abrogated the states' sovereign immunity in proceedings such as the one brought by Hinton. Accordingly, we must determine whether Congress, acting pursuant to section 5 of the Fourteenth Amendment or the Commerce Clause, expressed in the Act an unmistakable intention to abrogate the states' Eleventh Amendment immunity.

Two other courts of appeals have considered the availability of an award of compensatory damages against a state pursuant to the Randolph–Sheppard Act. The Third Circuit held that the Act does allow a vendor to enforce an arbitration panel's award of compensatory damages against a state agency. *Delaware Dep't of Health,* 772 F.2d at 1136–37. The court, noting that arbitrators commonly awarded retrospective compensatory relief at the time Congress amended the Act to provide for arbitration, concluded that Congress intended to afford vendors such relief against a state, and that by agreeing to participate in the program the state waived any Eleventh Amendment sovereign immu-

nity it otherwise might have enjoyed. *Id.* at 1137–38.

A divided panel of the Eighth Circuit reached the opposite result. *McNabb v. United States Dep't of Educ.*, 862 F.2d 681 (8th Cir.1988), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989). One member of the panel concluded that Congress meant for an arbitration panel to have the authority to grant prospective relief, but that the Act does not contain sufficiently unambiguous language to overcome the states' immunity from retroactive damage awards. Another member concluded that the Act does not authorize any award of money damages against a state, and, as a consequence, a state cannot be said to have waived its sovereign immunity by signing on to the program. The third member of the panel concluded that the Eleventh Amendment does not bar an award of compensatory relief against state agencies, because in his view the Act contains an unambiguous expression of congressional intent to abrogate the sovereign immunity of states participating in the program.

 As we read the Supreme Court's opinions in *Atascadero* and *Dellmuth*, our search for an expression of intent by Congress is confined to the actual text of the Randolph–Sheppard Act. In that text we find no mention of the possibility that a citizen might sue the state in federal court, of retroactive damages, or of sovereign immunity. Hinton, citing *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), contends that an abrogation or waiver may be implied from the text of a statute.

This case is distinguishable. The statute at issue in *Union Gas* explicitly included states as persons liable for remedial action and explicitly excluded states from liability in some, but not all, circumstances. *Union Gas*, 491 U.S. at 7–8, 109 S.Ct. at 2277. Five members of the Court found an unmistakably clear implication that Congress intended that states be liable in all but the excluded circumstances. *Id.* at 8, 109 S.Ct. at 2278. By contrast, the Randolph–Sheppard Act contains no mention of retroactive liability or of states' liability for, or immunity from, damages. A mere reference to binding arbitration in the Act does not unmistakably suggest that a vendor will be able to collect retroactive damages in federal court or that a state will surrender its sovereign immunity. According to the Supreme Court, much more explicit language is required to abrogate or waive a state's sovereign immunity.

The text of the Randolph–Sheppard Act reflects neither an unmistakable intention by Congress to abrogate the states' sovereign immunity nor a clear statement that participation in the program will constitute a waiver of immunity. In the absence of this language we need not determine whether Congress proceeded pursuant to the Commerce Clause or the Fourteenth Amendment, since it follows that a state enjoys sovereign immunity from a blind vendor's attempt to enforce an arbitration panel's award of retroactive damages in federal court.[3]

However, we do not agree with the district court that the arbitration panel's decision must be set aside. As we have explained, the Eleventh Amendment does not bar an Article I body from awarding retroactive damages against a state. It is only the private *enforcement* of such an award by a federal court that is forbidden by the amendment. Therefore, we reverse the district court's judgment insofar as it sets aside the arbitration panel's decision. We affirm the judgment insofar as it can be read to deny Hinton the enforcement of the

---

**3.** This result is not inconsistent with our holding in part II, *supra.* In part II, we held that the language of the statute implies an intent by Congress to allow arbitration panels to award retroactive relief to blind vendors. Here, we hold that the language of the statute is not sufficiently unambiguous as to permit a finding that Congress intended to allow blind vendors to enforce such awards in federal court. Both holdings would be consistent with a congressional view that states should submit willingly to arbitration panel decisions or that the Department of Education should sue to enforce the rights of blind vendors.

award.[4]

## IV.

◼ Finally, TDHS and the Department of Education argue that the award of attorneys' fees to Hinton also must be set aside. The district court did not explicitly consider the attorneys' fees issue but its opinion may be read to set aside the entire arbitration award.

TDHS and the Department of Education maintain that an arbitration panel lacked authority to award Hinton attorneys' fees. Citing the "American Rule," they contend that each party is responsible for its own fees absent an express statutory authorization or enforceable contract to the contrary. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–58, 260, 95 S.Ct. 1612, 1621–22, 1623, 44 L.Ed.2d 141 (1975).

The "American Rule" applies to the awarding of attorneys' fees to parties that have litigated their cause *in the federal courts* and, therefore, does not apply to this case, which concerns the awarding of attorneys' fees incurred during the arbitration process. *See Alyeska*, 421 U.S. at 269, 95 S.Ct. at 1627 ("courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation").

TDHS and the Department of Education cite no case law holding that the arbitration panel may not award attorneys' fees. Several courts have found to the contrary. *See Delaware Dep't of Health*, 772 F.2d at 1139–40 (upholding panel's award of attorneys' fees); *McNabb*, 862 F.2d at 685, 687–88 (two judges writing to remand to arbitration panel on issue of attorneys' fees, third judge writing to award fees to vendors); *Almond v. Boyles*, 792 F.2d 451, 456–57 (4th Cir.1986) (upholding, without discussion, district court's order to state to pay attorneys' fees of blind vendors), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 157 (1987).

TDHS also argues that the Eleventh Amendment bars attorneys' fees as well as other types of money damages. The Supreme Court previously has held that states may be sued for attorneys' fees that are authorized by federal civil rights statutes. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (42 U.S.C. § 1988 action). In *Hutto*, the Supreme Court determined that the fee award was ancillary to the injunctive relief. The basis for the *Hutto* Court's determination that ancillary costs to the state, such as attorneys' fees, are not barred by the Eleventh Amendment is the language in *Edelman v. Jordan*, which acknowledges that while some forms of prospective relief, such as the mailing of notices to a plaintiff class, would cost the state money in the execution, such costs were merely ancillary to valid prospective relief. *Hutto*, 437 U.S. at 690, 98 S.Ct. at 2573 (*citing Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974)). The *Hutto* Court further noted that federal courts are not barred by the Eleventh Amendment from enforcing valid injunctions through the use of financial penalties, including a "remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance." *Hutto*, 437 U.S. at 690, 98 S.Ct. at 2573. While the Court was analyzing a case involving a defendant's bad faith in complying with a previous order, it noted that the analysis is just as persuasive in situations in which the court seeks not to discipline a party for previous bad faith, but to restrain behavior during litigation. *Id.* at 696 n. 24, 98 S.Ct. at 2576 n. 24.

In *Hutto*, the Court seemed to imply that all costs, including attorneys' fees, traditionally are not subject to Eleventh Amendment restrictions. *Hutto*, 437 U.S. at 695, 98 S.Ct. at 2576. In a footnote, however, the Court clearly states that it is assuming

---

4. Hinton could collect the award if the state agency agrees to pay it or if the federal government enforces the award on his behalf (assuming such federal enforcement was authorized by the statute, which we do not decide today). *See*

*Blatchford*, —— U.S. at ——, 111 S.Ct. at 2584. A suit on the judgment in state court also is a possibility, although such a suit brings into play state doctrines of immunity.

that costs are awarded only to a prevailing party, and that since only prospective relief can be successfully pursued by an individual in a suit against a state, the Court assumes attorneys' fees would only be awarded in regard to prospective relief. *Id.* at 695 n. 24, 98 S.Ct. at 2576 n. 24.[5]

The Supreme Court later was confronted with a situation in which government officials successfully were sued for retroactive damages in their individual capacities pursuant to 42 U.S.C. § 1983, and the prevailing plaintiffs requested attorneys' fees from the state. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Our court, relying on *Hutto,* awarded the fees. In reversing, the Supreme Court determined that absent congressional authorization, attorneys' fees could not be awarded if the defendant state had not been prevailed against, either on the merits or because of legal immunity. *Id.* at 165, 105 S.Ct. at 3104 ("liability on the merits and responsibility for fees go hand in hand").[6]

Adopting this reasoning, the Fifth Circuit determined that if the Eleventh Amendment bars a plaintiff's claim for money damages against a state, then the court also lacks subject matter jurisdiction to award attorneys' fees. *Reed v. Bullock,* 872 F.2d 671 (5th Cir.1989). The plaintiff in *Reed* relied on *Hutto* and argued "that his claim for attorneys' fees is equitable in nature and is excepted from the eleventh amendment bar." *Id.* at 672. The appellate court, however, noted that unlike *Hutto,* "[h]ere ... no prospective relief is sought. Reed's request for attorneys' fees is simply part of his claim for retroactive monetary relief which is foreclosed by *Edelman." Id.; cf. Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 58 ("attorney's fees may be awarded as costs against a sovereign otherwise

immune, if it pursues a bad faith, vexatious, wanton or oppressive course of litigation, but may not be awarded against an immune sovereign as damages because of pre-litigation obduracy"), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

Based on the foregoing history of the interaction between attorneys' fees and the Eleventh Amendment, it appears that a court may award attorneys' fees only if it already has jurisdiction over some other part of the award. Therefore, attorneys' fees might be awarded against the state if the plaintiff prevailed on a request for prospective relief, but not if the defendant was immune from damages. Since we already have determined that the state in this case was immune from the enforcement of the damage award by federal courts, the state also is immune from enforcement of the attorneys' fee award. This is not to say that Hinton cannot enforce the attorneys' fee award through some other method, but he may not utilize the federal courts in order to collect the fees.

## V.

The district court's order is affirmed to the extent that it declined to enforce the arbitration award. However, because we have determined that the arbitration award is not affected by the Eleventh Amendment, the district court erred in setting it aside on Eleventh Amendment grounds. Accordingly, this cause is remanded to the district court for further proceedings concerning the petition for review of the arbitration award.

5. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court declined to decide whether attorneys' fees were outside the Eleventh Amendment under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Instead, the Court relied on the express congressional authority for such an award in a case brought under Title VII. *Id.* 427 U.S. at 457, 96 S.Ct. at 2672.

6. In a similar vein, defendants, such as legislators and judges, who enjoy immunity from suit, also enjoy immunity from attorneys' fees. *See Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 738, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980).