State of FLORIDA, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. 4:00CV445–RH.

United States District Court, N.D. Florida, Tallahassee Division.

March 2, 2001.

Kevin E. Hyde, Foley & Lardner, Jacksonville, FL, George Lee Waas, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, Michael Eugene Kinney, Foley & Lardner, Tallahassee, FL, for plaintiffs.

Mark Quinlivan, Senior Counsel, Civ. Div., U.S. Dept. of Justice, Steve Mandel, U.S. Dept. of Labor, Div. of Fair labor Standards, Washington, DC, William Joseph Moore, III, Henrichsen Siegel Moore, Jacksonville, FL, for defendants.

### OPINION ON MERITS

HINKLE, District Judge.

Certain federal environmental statutes include "whistleblower" provisions that prohibit an employer from firing or otherwise discriminating against an employee who reports environmental violations. Under the implementing regulations of the Secretary of Labor, an employee may commence and prosecute a federal administrative proceeding against his or her employer for violation of the whistleblower provisions. The statutes and regulations by their terms apply not only to private employers but also to public employers, including · states. The State of Florida, which has been named as a respondent in a federal administrative proceeding commenced by an individual former state employee, asserts the proceeding is barred by the Eleventh Amendment and the concept of state sovereign immunity incorporated in the United States Constitution. I agree and thus enjoin further proceedings against the state by the former employee.

## I. THE STATUTES AND IMPLEMENTING REGULATIONS

Congress has included "whistleblower" provisions in the six environmental statutes at issue in this case: the Clean Air Act,[1] the Water Pollution Control Act,[2] the Toxic Substances Control Act,[3] the Safe Drinking Water Act,[4] the Solid Waste Disposal Act,[5] and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").[6] Each of the whistleblower provisions prohibits an employer from firing or otherwise discriminating against an employee who takes certain actions, including filing or testifying in any proceeding resulting from the administration or enforcement of the underlying environmental statute. Each of the whistleblower provisions also authorizes an employee who believes he has been fired or discriminated against in violation of these provisions to file a complaint with the Secretary of Labor.[7] Each statute requires the Secretary to investigate any such com-

1. 42 U.S.C.A. § 7622 (West 1995).

2. 33 U.S.C.A. § 1367 (West 1986).

3. 15 U.S.C.A. § 2622 (West 1998).

4. 42 U.S.C.A. § 300j–9(i) (West Supp.2000).

5. 42 U.S.C.A. § 6971 (West 1995).

6. 42 U.S.C.A. § 9610 (West 1995).

7. Some of the statutes authorize the filing of a "complaint," while others allow an employee to "apply ... for a review." Whether denominated a complaint or an application for review, the employee's filing is substantively the same. For ease of reference, I use the nomenclature "complaint" to refer to the procedure under each of the statutes. In the implementing regulations, see 29 C.F.R. pt. 24, the Secretary of Labor has done the same.

plaint, including by affording the parties an opportunity, upon request, to present evidence at a public hearing. If the Secretary finds a violation, the Secretary may order appropriate relief, including reinstatement of a wrongfully fired employee, with compensation. Any such decision of the Secretary is subject to judicial review [8] and, if upheld, may be enforced through an action brought by the Secretary in the appropriate United States District Court.[9]

By regulation, the Secretary of Labor has expanded the applicable procedures. *See* 29 C.F.R.pt. 24 (1999). Upon the filing of a complaint under any or all of the whistleblower provisions, the Assistant Secretary conducts an investigation, determines whether a violation has occurred, and notifies the parties of the decision. 29 C.F.R. § 24.4. Any party then may file a request for an administrative hearing. 29 C.F.R. § 24.4(d)(2). If a hearing is requested, the Assistant Secretary's determination becomes "inoperative," *id.*, and a formal administrative hearing is conducted before an Administrative Law Judge, with presentation of evidence by the parties on the record. 29 C.F.R. § 24.6. At his or her discretion, the Assistant Secretary may participate as a party or as amicus curiae or not at all. 29 C.F.R. § 24.6(f)(1). The Administrative Law Judge issues a recommended decision, which becomes the final order of the Secretary unless a petition for review is filed with the Adminis-

trative Review Board. 29 C.F.R. § 24.7(d). If a petition for review is filed, the Administrative Review Board issues the final decision of the Secretary, which in turn is subject to judicial review. 29 C.F.R. § 24.8.

## II. PROCEDURAL BACKGROUND

Dr. Omar Shafey asserts that he was discriminated against and ultimately fired from his job with the State of Florida Department of Health in retaliation for allegedly protected communications he made regarding the alleged risks of occupational pesticide exposure and aerial application of malathion. Dr. Shafey filed a complaint with the Secretary of Labor under the statutes cited above,[10] initially naming as respondents the State of Florida and the Florida Department of Health (hereafter collectively referred to as "the State of Florida" or "the state"[11]), and later amending to name as additional respondents two state employees, Sharon Heber and David Johnson, in their individual and official capacities. Dr. Shafey sought, among other things, reinstatement, back pay, and compensatory and exemplary damages.

The Assistant Secretary investigated and determined no violation had occurred. Dr. Shafey requested an administrative hearing, and the matter was assigned to an Administrative Law Judge, in accordance with the applicable regulations. The re-

---

**8.** *See* 42 U.S.C. § 7622(c) (Clean Air Act); 33 U.S.C. §§ 1367(a), 1369 (Water Pollution Control Act); 15 U.S.C. § 2622(c) (Toxic Substances Control Act); 42 U.S.C. § 300j–9(i)(3) (Safe Drinking Water Act); 42 U.S.C. §§ 6971(b), 6976(a) (Solid Waste Disposal Act); 42 U.S.C. §§ 9610(b), 9613 (CERCLA). Such review occurs in the appropriate United States Court of Appeals or, in the case of CERCLA, in the appropriate United States District Court. While the whistleblower statutes do not all expressly set forth a standard of review, the parties in the case at bar apparently agree that review comports with standards ordinarily applicable in the administrative context and is *not de novo*.

**9.** *See* 42 U.S.C. § 7622 (Clean Air Act); 15 U.S.C. § 2622(d) (Toxic Substances Control

Act); 42 U.S.C. § 300j–9(i)(4) (Safe Drinking Water Act). The merits of the administrative decision presumably are not subject to review in an enforcement action.

**10.** Dr. Shafey's original complaint was filed pursuant to the Clean Air Act, the Water Pollution Control Act, and the Toxic Substances Control Act. Claims under the Safe Drinking Water Act, the Solid Waste Disposal Act, and CERCLA were added to Dr. Shafey's amended complaint.

**11.** In all respects relevant to this opinion, the Florida Department of Health is the equivalent of the State of Florida. It would make no difference if the administrative proceeding and this lawsuit involved only either one, rather than both, as a party.

spondents moved to dismiss, based on Eleventh Amendment and sovereign immunity, but the Administrative Law Judge denied the motion on the grounds he had no authority to determine those issues.

The respondents then filed this action seeking to enjoin the administrative proceeding. Named as defendants are the Department of Labor, various Department of Labor officials, and Dr. Shafey. I entered a preliminary injunction blocking further administrative proceedings pending disposition of this action. With the consent of all parties, the matter now is before the court for final ruling on the merits based on the parties' briefs, oral arguments, and an agreed record.

## III. MERITS

The issue is whether the Eleventh Amendment and constitutional doctrine of state sovereign immunity bar a federal administrative proceeding of the type Dr. Shafey initiated and the Department of Labor proposes to conduct. I begin the analysis of this issue with a review of settled Eleventh Amendment and sovereign immunity principles as applicable in an ordinary lawsuit, concluding that Dr. Shafey's claims against the state would be barred if asserted in court, that his claims against the individual respondents in their official capacities would be barred to the extent they seek damages or other retrospective relief but not to the extent they seek prospective relief, and that his claims against the individual respondents in their individual capacities would not be barred. I then analyze the applicability of these same principles in an administrative forum, concluding that the change in forum does not change the applicability of these principles. I next address, and reject, the contention that whistleblower proceedings of this type are prosecuted by the Department of Labor (that is, by the United States), not by the complainant, and thus are not barred. I then address, and reject, the contention that whistleblower proceedings of this type have been validly authorized by Congress under § 5 of the Fourteenth Amendment and thus are not

barred. Finally, I note, but do not resolve, the issue of whether Dr. Shafey may proceed with his administrative action as against the individual respondents.

### A. *Eleventh Amendment and Sovereign Immunity Principles Applicable in Litigation*

As background for applying Eleventh Amendment and sovereign immunity principles in the administrative setting at issue, it is useful to begin with a review of the principles that apply in the more traditional setting of an ordinary lawsuit.

■ First, states have Eleventh Amendment immunity from lawsuits brought by a private party in federal court. *See, e.g., Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ Second, in addition to Eleventh Amendment immunity, states also have sovereign immunity that is implicit in the structure of the Constitution, separate and apart from the Eleventh Amendment. *See, e.g., Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). This constitutional state sovereign immunity applies not only in federal litigation but also in actions brought in state court. *Id.*

■ Third, these immunities do not bar an action brought by the federal government. *See Principality of Monaco v. Mississippi*, 292 U.S. 313, 328–29, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) (collecting cases). Just as the states' immunity from suits brought by private individuals is implicit in the constitutional structure, so also is their lack of immunity from suits brought by the federal government. *See Alden*, 527 U.S. at 755–56, 119 S.Ct. 2240.

■ Fourth, these immunities do not foreclose an action against a state official, in his or her official capacity, seeking solely prospective relief. *See, e.g., Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Federal courts thus may require state officials to comply with the federal Constitution and laws going

forward, without awarding damages or other retrospective relief recoverable from the state treasury. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ Fifth, these immunities do not foreclose an action against an individual state official, in his or her *individual* capacity, seeking damages payable solely by the individual state official, not from the state treasury. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Such officials do, however, have *qualified* immunity from such claims. *Id.; see also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ Sixth, Congress may abrogate Eleventh Amendment immunity and constitutional sovereign immunity through legislation validly enacted under § 5 of the Fourteenth Amendment, which was adopted partly for the purpose of limiting state sovereignty with respect to the substantive matters addressed by the Amendment. *See, e.g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 451, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The immunities may not, however, be abrogated by Congress by legislation adopted only under Article I or other provisions of the Constitution, aside from the Fourteenth Amendment. *See, e.g., Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ Seventh, a state may waive its own immunity, so long as it does so explicitly and unambiguously. *See, e.g., College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

Based on these principles, it is clear that, had Dr. Shafey filed a lawsuit asserting the same whistleblower claims as he asserts in his amended administrative complaint, then, unless Congress could be said to have abrogated Eleventh Amendment

and constitutional sovereign immunity from such claims under § 5 of the Fourteenth Amendment, (1) Dr. Shafey's claims against the State of Florida would be barred, and (2) claims for a money judgment or other retrospective relief against the individual respondents in their official capacities would be barred, but (3) claims for prospective relief against the individual respondents would not be barred, and (4) claims for damages or retrospective relief against the individual defendants in their individual capacities would not be barred by Eleventh Amendment or constitutional sovereign immunity (but would be subject to the possible defense of qualified immunity).[12]

## B. *Applicability of Eleventh Amendment and Sovereign Immunity Principles in the Administrative Setting* ·

The Department of Labor and Dr. Shafey take no issue with the general principles set forth above. They assert, however, that these principles do not apply to administrative proceedings generally, or specifically to the type of proceedings established by the Department.

It of course is true that the Eleventh Amendment speaks only of the "[j]udicial power" of the United States, and that sovereign immunity is a concept that most commonly applies to lawsuits. But the constitutional principles embodied in the Eleventh Amendment and in the concept of state sovereign immunity are not so easily cabined. The assertion that, without its consent, a state may be subjected to a proceeding commenced and prosecuted by a private individual in a federal administrative forum cannot be squared with the Supreme Court's broad articulation of the constitutional concept of state sovereign immunity in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).

---

**12.** The analysis of the Eleventh Amendment and sovereign immunity principles that would apply in a lawsuit, as set forth in the text, has been undertaken as background for addressing the applicability of these principles in an administrative proceeding. Whether Dr.

Shafey would have the right to bring a lawsuit for violation of the whistleblower provisions—separate and apart from any Eleventh Amendment or sovereign immunity concerns—is an issue not before the court. No opinion is expressed on that issue.

There the Supreme Court held that the constitutional limits on Congress's ability to subject a state to claims by private individuals apply in the state's own courts just as in the federal courts. The Supreme Court's reasoning compels the conclusion that the same constitutional principles apply to claims commenced and prosecuted by a private individual in an administrative forum such as involved in the case at bar.

In *Alden*, the Court began by acknowledging that its holding was not required by the language of the Eleventh Amendment, but the Court said the constitutional concept of sovereign immunity was far broader than that language, standing alone, would otherwise suggest. Noting that it had sometimes referred to states' immunity from suit as "Eleventh Amendment immunity," the Court said:

> The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by the Court make clear, *the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today* (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden*, 527 U.S. at 712–13, 119 S.Ct. 2240 (emphasis added). After reviewing earlier decisions on this subject, the Court said:

> These holdings reflect a settled doctrinal understanding, consistent with the views of the leading advocates of the Constitution's ratification, that sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself.... *[T]he scope of the States' immunity from suit*

*is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.*

*Alden*, 527 U.S. at 728–29, 119 S.Ct. 2240 (emphasis added). The Court continued:

> "Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.' *Blatchford v. Native Village of Noatak,* [501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)]. That presupposition, first observed over a century ago in *Hans v. Louisiana,* [134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)], has two parts: first, that each State is a sovereign entity in our federal system; and second, that *" '[i]t is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent,' "* *id.,* at 13, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (emphasis deleted), quoting The Federalist No. 81, p. 487 ..." *Seminole Tribe,* [517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)].

> *Accord, Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) ("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity").

*Alden*, 527 U.S. at 729–30, 119 S.Ct. 2240 (emphasis and bracketing added), quoting earlier authorities as indicated.

The Court also made clear that this fundamental constitutional presupposition—that, in the words of the Federalist, it "is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent"—was not limited to traditional types of proceedings, but instead applied also, perhaps especially, to novel types of proceedings not contemplated by the framers. Thus the Court said:

[W]e have recognized a "presumption that *no anomalous and unheard-of proceedings or suits were intended to be raised up by the Constitution—anomalous and unheard of when the constitution was adopted."* Hans, 134 U.S. at 18, 10 S.Ct. 504; *accord, id.,* at 15, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. As a consequence, we have looked to *"history and experience, and the established order of things," id.,* at 14, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, rather than "[a]dhering to the mere letter" of the Eleventh Amendment, *id.,* at 13, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, in determining the scope of the States' constitutional immunity from suit.

*Alden,* 527 U.S. at 727, 119 S.Ct. 2240 (emphasis added). The Court also quoted its initial rejection of the assertion that the Eleventh Amendment allowed claims against a state by its own citizens, labeling the argument "an attempt to strain the Constitution and the law *to a construction never imaged or dreamed of." Alden,* 527 U.S. at 728, 119 S.Ct. 2240 (emphasis added), *quoting Hans v. Louisiana, supra,* 134 U.S. at 14–15, 10 S.Ct. 504.

An administrative proceeding prosecuted against a state by a private individual was, beyond question, an "unheard of proceeding" with no precedent in "history and experience" or "the established order of things," either when the Constitution was adopted or, for that matter, until quite recently. Indeed, the parties have not cited, and the court is unaware of, any other statute or regulation authorizing similar or analogous proceedings, or any historical precedent for such proceedings. If the framers "never imagined or dreamed of" lawsuits in federal court against states by their own citizens, they surely also did not imagine or dream of claims against states by their own citizens before a federal agency or Administrative Law Judge.

The Supreme Court's *application* of these principles in *Alden* also furthers the analysis in the case at bar. The Court articulated the test for determining whether Congress has authority under Article I of the Constitution to subject states to claims in a particular forum (there the state's own courts, here a federal administrative proceeding) as whether "there is 'compelling evidence' that the States were required to surrender this power to Congress pursuant to the constitutional design." *Alden,* 527 U.S. at 731, 119 S.Ct. 2240. Dr. Shafey and the Department of Labor have cited no evidence, compelling or otherwise, that the states were required, in the constitutional design, to surrender to Congress (or to the Department of Labor) the authority to subject states to federal administrative claims prosecuted by private individuals.

And in language equally applicable in the case at bar, in *Alden* the Supreme Court rejected efforts to limit its prior Eleventh Amendment and sovereign immunity decisions to claims in federal court, saying that, although those decisions did indeed deal with claims in federal court, the "logic of the decisions ... does not turn on the forum in which the suits were prosecuted...." *Alden,* 527 U.S. at 733, 119 S.Ct. 2240. The Court said that, instead of turning merely on form, the underlying constitutional principles involved "considerations of great substance," *id.* at 750, 119 S.Ct. 2240, and it articulated those principles as follows:

[O]ur federalism requires that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation. *See, e.g., United States v. Lopez,* [514 U.S. 549, 583, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)] (concurring opinion); *Printz* [*v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)]; *New York [v. United States,* 505 U.S. 144, 188, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)]. The founding generation thought it "neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, *should be summoned as defendants to answer the complaints of private persons." In re Ayers,* [123 U.S. 443, 505, 8 S.Ct. 164, 31 L.Ed. 216

(1887)]. The principle of sovereign immunity preserved by constitutional design "thus accords the States the respect owed them as members of the federation." *Puerto Rico Aqueduct and Sewer Authority,* [506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)]; *accord,* [*Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 268, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)] (recognizing "the dignity and respect afforded a State, which the immunity is designed to protect").

*Alden,* 527 U.S. at 748–49, 119 S.Ct. 2240 (emphasis and bracketing added).

It is true here, as it was in *Alden,* that the Supreme Court's Eleventh Amendment and sovereign immunity decisions have not dealt with the specific forum at issue. Prior to *Alden,* the Court had not addressed the applicability of these doctrines in state court. The Court still has not addressed the applicability of these doctrines in a federal administrative tribunal. But it also is true here, as it was in *Alden,* that the "logic of the decisions . . . does not turn on the forum in which the suits were prosecuted." *Alden,* 527 U.S. at 733, 119 S.Ct. 2240. And it is true here, as it was in *Alden,* that the constitutional dignity of the states demands that they not be "summoned as defendants to answer the complaints of private persons." *Id.* at 748, 119 S.Ct. 2240.

This result makes sense. If it would be a constitutional affront to the State of Florida to be hailed into an Article III court in Tallahassee, it surely would not be less so to be hailed before an administrative tribunal established and governed by rules of the United States Department of Labor under delegation by Congress. If state sovereignty prohibits either the Congress under Article I of the Constitution or the federal courts under Article III from subjecting the state to claims of private individuals, then surely the result should be no different for an agency created not by the Constitution itself but only by Congress under its Article I powers. One cannot conscientiously read *Alden* (and the Supreme Court's other recent Eleventh Amendment and constitutional sovereign immunity decisions) as supporting any other view.

While limited, the authority that does exist on this precise issue supports this result. *See Ohio Envtl. Prot. Agency v. United States Dep't of Labor,* 121 F.Supp.2d 1155 (S.D.Ohio 2000) (holding that the prosecution by a private individual of an administrative whistleblower complaint against a state agency is barred by the Eleventh Amendment); *Rhode Island v. United States,* 115 F.Supp.2d 269 (D.R.I.2000) (same).[13]

▮ I thus conclude that state constitutional sovereign immunity bars the commencement and prosecution of a federal administrative proceeding by a private individual against a state, to the same extent as would be true with respect to a private individual's lawsuit in federal or state court.

## C. *The Administrative Proceeding At Issue: Federal Investigation or Claim, or Claim Prosecuted by a Private Individual?*

▮ Having determined how Eleventh Amendment and constitutional state sover-

13. The substantial recent developments in Eleventh Amendment and constitutional sovereign immunity law, see *Alden v. Maine* and *Seminole Tribe v. Florida,* render older authorities unreliable indicators of the current law. In *Ellis Fischel State Cancer Hosp. v. Marshall,* 629 F.2d 563 (8th Cir.1980), the Eighth Circuit allowed an administrative proceeding against a state agency to proceed, asserting, with little analysis and contrary to the view now adopted by *Alden,* that the Eleventh Amendment has no application except to proceedings brought under Article III. In *Ten-nessee Dep't of Human Serv. v. United States Dep't of Educ.,* 979 F.2d 1162 (6th Cir.1992), the Sixth Circuit allowed a congressionally authorized private arbitration proceeding against a state agency to proceed, based partly on the now-discredited view that Congress may abrogate Eleventh Amendment immunity under Article I of Constitution, *see* 979 F.2d at 1166, and based partly on the now-discredited view that the Eleventh Amendment applies only to proceedings under Article III of Constitution, *see* 979 F.2d at 1167.

eign immunity principles would apply to a private lawsuit brought by Dr. Shafey making the same claims he asserts in his administrative complaint (*see* section III–A above), and having determined that these principles apply in the administrative context to the same extent as they would apply in a lawsuit (*see* section III–B above), the next task is to determine whether the administrative proceeding that the Department of Labor proposes to conduct on Dr. Shafey's administrative complaint is the functional equivalent of an action commenced and prosecuted by Dr. Shafey individually (and thus barred as against the state) or, as Dr. Shafey and the Department of Labor assert, the functional equivalent of an investigation conducted by, or administrative proceeding commenced and prosecuted by, the Department of Labor itself (and thus not barred).

As a starting point for addressing this issue, it bears noting that Congress clearly acted within its constitutional authority in adopting the whistleblower provisions, making them applicable to the states, and authorizing the Department of Labor to investigate violations, even by the states. *See, e.g., Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (recognizing Congress's authority to make binding on state governments general provisions adopted under the Commerce Clause). Moreover, neither the Eleventh Amendment nor the doctrine of state constitutional sovereign immunity bar proceedings against a state brought by the federal government. *See, e.g., Principality of Monaco v. Mississippi*, 292 U.S. 313, 328–29, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) (collecting cases).

The Department and Dr. Shafey assert that the administrative proceeding at issue is merely a step in the Department's investigation of the state's possible violation of the unquestionably valid whistleblower provisions. They assert that, if deemed a proceeding against the state, the administrative proceeding at issue is a proceeding brought by the Department of Labor (that is, by the federal government).

In fact, however, the Department of Labor completed its investigation of Dr. Shafey's complaint and determined there had been no violation. The matter would have ended there, but for Dr. Shafey's request for an administrative hearing. It was Dr. Shafey, not the Department of Labor, that made the determination to proceed further, and it was Dr. Shafey, not the Department, that would have presented evidence and argument at the administrative hearing, had it gone forward. In short, it was Dr. Shafey, not the Department of Labor, who commenced and was prosecuting the administrative proceeding at issue.

Moreover, the administrative proceeding was no mere investigation. It would have included, instead, a formal evidentiary hearing, resulting in formal findings of fact, with defined legal consequences. Had the result been a finding that the state violated the whistleblower provisions, and had that conclusion been upheld through the administrative appeals process, the state would have faced the possibility of an enforcement proceeding in federal court, at the behest of the Department of Labor, apparently without a *de novo* evidentiary hearing or other *de novo* review of the administrative finding of a violation. The proposed administrative proceeding thus was not a step in a Department of Labor investigation; it was, instead, a formal adjudicatory proceeding with defined legal consequences to which the State of Florida was being required to respond without its consent.[14]

---

14. That any enforcement action would have to be brought by the Department of Labor, rather than by Dr. Shafey, is no answer. On the one hand, if the state appropriately could be required to respond to the administrative proceeding brought by Dr. Shafey, and if the result were a finding in Dr. Shafey's favor, then the state might well be expected to comply with the decision, without the necessity

In *Alden,* the Supreme Court described the reasons for the distinction between proceedings against states brought by the federal government, on the one hand, and by private individuals, on the other, as follows:

> A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3, differs in kind from the suit of an individual: While the Constitution contemplates suits among the members of the federal system as an alternative to extra legal measures, the fear of private suits against nonconsenting States was the central reason given by the founders who chose to preserve the States' sovereign immunity. Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, *a control which is absent from a broad delegation to private persons to sue nonconsenting States.*

*Alden,* 527 U.S. at 756, 119 S.Ct. 2240 (emphasis added).

In the case at bar, nobody with the responsibility to "take Care that the Laws be faithfully executed" has determined that Dr. Shafey's complaint should be pursued further. No federal official has taken responsibility for the decision to proceed. Instead, the Department of Labor determined Dr. Shafey's allegations unfounded and would have left the matter there but for Dr. Shafey's decision to press on. Further proceedings thus will go forward not because of any federal decision but solely because the Department of Labor, by regulation, made a "broad delegation" to private persons—in this case, to Dr. Shafey—of the right to compel a nonconsenting state to respond further.

It is true, of course, that a holding that Dr. Shafey cannot commence and prosecute this administrative proceeding will make no real difference if, as would be its right, the Department of Labor determines to pursue the action on its own.[15] Still, this is not a trivial distinction. The Department of Labor presumably will exercise some judgment in deciding whether and how far to pursue an action against a sovereign state. If it decides to go forward, the Eleventh Amendment and constitutional sovereign immunity doctrine will pose no obstacle. But the Department of Labor has made no such decision to date, and the State of Florida cannot be required without its consent to respond to a proceeding commenced and prosecuted by a private individual. The dignity afforded a sovereign state under the Constitution demands no less.

## D. Congressional Abrogation of Eleventh Amendment and Sovereign Immunity

 Dr. Shafey contends that, even if the state otherwise would have Eleventh Amendment and constitutional state sovereign immunity from an administrative complaint of the type at issue, Congress validly abrogated that immunity by adopting the whistleblower provisions pursuant to Congress's enforcement powers under

for an enforcement proceeding. The states and their agencies and officials, after all, are expected to comply with the Supremacy Clause and all binding federal laws, even if enforcing compliance might be difficult or virtually impossible. On the other hand, the state ought not be expected or required to respond to an administrative proceeding that is barred by constitutional state sovereign immunity, even if any adverse decision might ultimately be unenforceable. *Cf. Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (recognizing that absolute and qualified immunity mean immunity from the burden of having to defend a claim, not merely immunity from an adverse result).

**15.** *See, e.g., Employees of Dep't of Pub. Health & Welfare v. Department of Pub. Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (holding action prosecuted by federal government not barred by Eleventh Amendment immunity even when any recovery of money will inure to private claimants).

§ 5 of the Fourteenth Amendment. *See generally Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (recognizing that Congress may abrogate Eleventh Amendment immunity pursuant to § 5 of the Fourteenth Amendment). In order validly to abrogate the states' immunity pursuant to § 5, Congress must do so clearly, and the remedies Congress adopts must be congruent with and proportional to the state constitutional violations at issue. *See Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (analyzing whether Congress "unequivocally expressed its intent to abrogate" the states' Eleventh Amendment immunity when enacting the Indian Gaming Regulatory Act); *Board of Trustees v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (20001) (holding Americans with Disabilities Act not valid § 5 legislation because not congruent or proportional to limited state constitutional violations remedied by Act); *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (holding Age Discrimination in Employment Act not valid § 5 legislation); *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (adopting congruence and proportionality standards).

When a public employee is fired or otherwise discriminated against for activities protected by the whistleblower provisions, the firing or discrimination often, perhaps almost always, violates not only the whistleblower provisions but also the First Amendment. *See, e.g., Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The First Amendment was made binding on the states by the Fourteenth Amendment. *See, e.g., Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). I assume, without deciding, that Congress could validly abrogate the states' immunity from whistleblower claims, if Congress

chose to do so, under § 5 of the Fourteenth Amendment.

To date, however, Congress has not chosen to do so. The whistleblower provisions adopted by Congress evidence no clear intention by Congress to make states susceptible to whistleblower claims by private individuals. To the contrary, Congress authorized only an investigation and appropriate action by the Secretary of Labor, not by any private individual. The administrative process here at issue—under which a private individual may commence and prosecute an administrative proceeding after the Department of Labor has found a complaint unfounded—was adopted not by Congress in the statute but by the Secretary of Labor in the implementing regulations. The Secretary of Labor has no enforcement authority under § 5 of the Fourteenth Amendment and may not abrogate state sovereign immunity.[16]

The immunity of the State of Florida from Dr. Shafey's whistleblower proceeding thus remains intact. Dr. Shafey may not proceed with his administrative complaint as against the State of Florida. Nor may he seek retrospective relief from the individual respondents in their official capacities. An appropriate injunction will be entered barring such proceedings.

## E. *The Remaining Claims Against the Individual Respondents*

The applicability of Eleventh Amendment and state constitutional sovereign immunity to Dr. Shafey's administrative proceeding does not mean, however, that the administrative proceeding may not go forward to the extent it seeks prospective relief as against the individual respondents in their official capacities, or to the extent it seeks relief against the individual respondents in their individual capacities. The doctrines of Eleventh

---

**16.** The Department of Labor and individual federal defendants do not disagree with this conclusion. They assert that states have no immunity from administrative proceedings of this type, but they acknowledge that, if applicable, the immunity has not been abrogated by Congress.

Amendment and constitutional state sovereign immunity would not bar such claims if asserted in a lawsuit and thus do not bar such claims in the administrative proceeding at issue. Whether Dr. Shafey has stated a claim against the individual respondents on which relief could be granted is an issue not properly before this court at this time.[17]

### Conclusion

For these reasons,

IT IS ORDERED:

The clerk shall enter judgment stating, "Judgment is entered against defendants for declaratory and injunctive relief, as follows. It is declared that the State of Florida and Florida Department of Health have constitutional sovereign immunity from commencement and prosecution of Department of Labor Case No.2000–CAA–019 by Dr. Omar Shafey, and that Sharon Heber and David Johnson, in their official capacities, are protected by the state's constitutional sovereign immunity from any award of damages or other retrospective relief that would be barred if sought from the State of Florida in its name. Defendants are enjoined from taking any further action in Department of Labor Case No.2000–CAA–019, in derogation of the constitutional sovereign immunity as recognized by this declaration, other than action intended to effect the dismissal of that proceeding, unless the Department of Labor or an official thereof unequivocally elects to take over the prosecution of that proceeding. If the Department of Labor or an official thereof unequivocally elects to take over the prosecution of that proceeding, this injunction will not preclude participation in that proceeding by Dr. Shafey." The clerk shall close the file.

---

**17.** The state asserts that the statutes and regulations do not create a claim against the individuals in either their official or individual capacities, that Dr. Shafey's administrative complaint against them thus should be dismissed, and that in any event the individual respondents in their individual capacities have qualified immunity. These are not, however, issues that appropriately should be addressed in this forum at this time, rather than as part of the normal administrative process. Unlike the defense of Eleventh Amendment or sovereign immunity, the defense that the administrative complaint fails to state a claim presents no issue warranting judicial relief in advance. *Compare Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)

(allowing immediate appeal of an interlocutory order denying a defendant's motion to dismiss on Eleventh Amendment immunity grounds), *with Crymes v. DeKalb County,* 923 F.2d 1482 (11th Cir.1991) (holding that the denial of a motion to dismiss on grounds of ripeness was not immediately appealable). Similarly, whether qualified immunity bars Dr. Shafey's claim may turn on facts that are not now before the court and that in any event should be addressed first in the administrative forum. *Cf. Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that where qualified immunity depends on disputed facts, an order denying summary judgment based on qualified immunity is not immediately appealable).